IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| EYAL HANFLING, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GRINNELL COLLEGE,<br><br>    Defendant. | Case No. 4:26-cv-00213-RGE-HCA<br><br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................iii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 1

ARGUMENT ................................................................................................................. 6

I.    Plaintiff does not possess Article III standing................................................... 6

II.   Plaintiff does not state a claim for violation of the federal Wiretap Act........................... 14

    A.    Plaintiff does not plausibly allege Grinnell intercepted contents of an electronic communication................................................................................. 14

    B.    Grinnell is protected by the Party Exception to the Wiretap Act. ........................... 15

    C.    Grinnell is protected by the Consent Exception to the Wiretap Act. ....................... 16

        1.    Plaintiff admits Grinnell consented to the allegedly tortious conduct............ 17

        2.    Plaintiff also consented to the allegedly tortious conduct. ............................. 17

III.  Plaintiff does not state a claim for violation of New York's Deceptive Act and Practices Act or False Advertising Law (Counts I, II). ....................................................... 21

    A.    Plaintiff has not plausibly alleged that he suffered an actual injury. ....................... 21

    B.    Plaintiff has not plausibly alleged that he was materially misled. ........................... 23

IV.   Plaintiff does not state a common law claim (Counts IV, V, VI). ...................................... 25

    A.    Plaintiff does not state an invasion of privacy claim. ............................................ 25

    B.    Plaintiff does not state a fraud claim................................................................ 28

    C.    Plaintiff does not state an unjust enrichment claim. ............................................. 30

CONCLUSION.............................................................................................................. 32

## TABLE OF AUTHORITIES

**Cases**

*Adams v. PSP Grp., LLC*, 691 F. Supp. 3d 1031(E.D. Mo. 2023) ..................................... 7, 10, 27

*Andrews v. Prisma Health*, No. 6:23-CV-03153-JDA, 2024 WL 3861384 (D.S.C. Aug. 16, 2024) ................................................................................................................................... 7

*Apel v. T-Mobile USA, Inc.*, No. 3:24-cv-00098-RGE-WPK, 2025 WL 2222737 (S.D. Iowa July 30, 2025) ............................................................................................................... 14

*Arndt v. Gov't Emps. Ins. Co.*, 750 F. Supp. 3d 518 (D. Md. 2024)................................... 8, 9

*Asbury Square, L.L.C. v. Amoco Oil Co.*, 218 F.R.D. 183 (S.D. Iowa 2003) ............................... 29

*Asbury Square, L.L.C. v. Amoco Oil Co.*, 221 F.R.D. 497 (S.D. Iowa 2004) ............................... 30

*Bradshaw Renovations, LLC v. Graham*, 20 N.W.3d 479(Iowa 2025)........................................ 31

*Brown v. Learfield Commc'ns, LLC*, No. 1:23-CV-00374-DAE, 2024 WL 3676709 (W.D. Tex. June 27, 2024) .......................................................................................................... 16, 17

*Brown v. N. Cent. F.S., Inc.*, 173 F.R.D. 658 (N.D. Iowa 1997) ................................................... 29

*Butler v. U.S. Bancorp*, No. 24-CV-03700 (JMB/SGE), 2026 WL 883904 (D. Minn. Mar. 31, 2026) .................................................................................................................. passim

*Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) ......................... 19

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020)........................................... 25

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560 (8th Cir. 2019) ................................ 31

*Cohen v. Casper Sleep, Inc.*, No. 17cv9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)... 22, 23

*Cook v. Gamestop, Inc.*, 148 F.4th 153 (3d Cir. 2025)............................................................ passim

*Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177 (N.Y. Ct. App. 2012) ........................................ 31

*Dean Snyder Constr. Co. v. Travelers Prop. Cas. Co. of Am.*, 173 F. Supp. 3d 837 (S.D. Iowa 2016) .................................................................................................................................. 32

*Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787 (E.D. Pa. Aug,. 25, 2025)................... 7, 27

*Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12–CV–01058 (KAM), 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ............................................................................................ 24

*Dier v. Peters*, 815 N.W.2d 1 (Iowa 2012)................................................................................... 29

*Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222 (M.D. Pa. 2023)......................................................... 7

*Foster v. Walmart, Inc.*, 15 F.4th 860 (8th Cir. 2021) ........................................................ 17, 19, 20

*Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ...................................................................................................................... 7

*Gervasio v. DeNapoli*, 126 A.D.2d 514 (N.Y. App. Div. 1987)...................................................... 30

*Gilday v. Dubois,* 124 F.3d 277, 296 n.27 (1st Cir. 1997) ............................................................. 14

*Goel v. Ramachandran*, 975 N.Y.S.2d 428 (N.Y. App. Div. 2013)................................................ 32

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002).............................................. 21

*Greco v. Syracuse ASC, LLC*, 193 N.Y.S.3d 511 (N.Y. App. Div. 2023) ....................................... 22

*Greenburg v. Chrust*, 282 F. Supp. 2d 112 (S.D.N.Y. 2003)........................................................... 29

*Hubbert v. Dell Corp.*, 835 N.E.2d 113 (Ill. Ct. App. 2005)........................................................... 20

*In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423 (3d Cir. 2026)..... passim

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ................................ 13

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015)11, 15, 17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019)........... 12

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) ........................11, 12, 16

*In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017)........................................................................ 9

*Italian Tile Marble & Granite, Inc. v. Floor & Decor*, No. 25-cv-3533 (DLI) (LKE), 2026 WL 1224045 (E.D.N.Y. May 5, 2026)............................................................................................ 23, 24

*J.S. v. Spring Fertility Holdings, LLC*, No. 5:24-cv-07374-EJD, 2026 WL 1483490 (N.D. Cal. May 27, 2026)............................................................................................................................ 16

*Joiner v. NHL Enters., Inc.* No. 23-CV-2083 (LAK) (BCM), 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) ................................................................................................................................ 16, 25

*Jones v. Bloomingdales.com, LLC*, 124 F.4th 535 (8th Cir. 2024) ........................................ passim

*Jurgens v. Build.com, Inc.*, No. 4:17–cv–00783–AGF, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) ...................................................................................................................................... 15

*Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ................................................................................................................................................ 22

iv

*Kirk v. Heppt*, 532 F. Supp. 2d 586 (S.D.N.Y. 2008) ..................................................... 30

*Koeppel v. Spiers*, 808 N.W..2d 177 (Iowa 2011) ..................................................... 8, 25

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025)..................................... 19

*Lakeside Feeders, Inc. v. Producers Livestock Mktg. Assoc.*, 666 F.3d 1099 (8th Cir. 2012) ...... 32

*Lama Holding Co. v. Smith Barney*, 668 N.E.2d 1370 (N.Y. 1996) ............................... 28

*Legg v. W. Bank*, 873 N.W.2d 763 (Iowa 2016).......................................................... 31

*Leveke v. Hearst Props., Inc.*, 764 F. Supp. 3d 817 (S.D. Iowa 2025)............................ 2

*Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59 (N.Y. App. Div. 2004) ...................................................................................... 25

*Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104 (N.Y. Ct. App. 2011) ............ 31

*Manning v. Pioneer Sav. Bank*, 55 N.Y.S.3d 587 (N.Y. Sup. Ct. 2016)........................ 22

*Mar-Cone Appliance Parts Co. v. Managan*, 879 F. Supp. 2d 344 (W.D.N.Y. 2012) ........ 29

*Massie v. Gen. Motors*, No. 21-cv-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ........ 27

*MHC Inv. Co. v. Racom Corp.*, 254 F. Supp. 2d 1090 (S.D. Iowa 2002) ...................... 28

*MidwestOne Bank v. Heartland Co-op*, 941 N.W.2d 876 (Iowa 2020) ......................... 31

*Mount v. PulsePoint, Inc.*, No. 13 Civ. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) .................................................................................. 22, 23

*Naimi v. Starbucks Corp.*, 798 F. App'x 67 (9th Cir. 2019)........................................ 21

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .................................. 18

*Noriega v. Abbott Lab'ys*, No. 23 Civ. 4014 (PAE), 2026 WL 1601501 (S.D.N.Y. June 4, 2026) .................................................................................. 21, 23

*Okash v. Essentia Health*, Civ. No. 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ............................................................................................ 16

*Oliver v. Noom, Inc.*, No. 2:22-CV-1857, 2023 WL 8600576 (W.D. Pa. Aug. 22, 2023)............ 27

*Poppel v. Est. of Archibald*, No. 1:19-CV-01403 (ALC), 2020 WL 2749719 (S.D.N.Y. May 27, 2020) .......................................................................................... 8

*Port Auth. of N.Y. & N.J. v. Brooklyn Union Gas Co.*, 119 N.Y.S.3d 191 (N.Y. App. Div. 2020) 32

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-CV-00382-KDB-SCR, 2025 WL 880538 (W.D.N.C. Mar. 20, 2025).................................................................... 16

*Sigall v. Zipcar, Inc.* No.  13 Civ. 4552(JPO), 2014 WL 700331 (S.D.N.Y. Feb. 24, 2014)......... 25

*Sisti v. Bosley Inc.*, No. 2:25-cv-10669-JFW-DFMx, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) .................................................................................................................................... 19

*Small Justice LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190 (D. Mass. 2015) .................... 20

*Smith v. Chase Manhattan Bank, USA*, 741 N.Y.S.2d 100 (N.Y. App. Div. 2002) ...................... 22

*So v. Hyatt Hotels, Corp.*, No. 25 C 10483, 2026 WL 1235036 (N.D. Ill. May 5, 2026)............. 16

*Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377 (E.D.N.Y. 2018)........................ 29

*Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726 (Iowa 2009) .................................................. 30

*Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552 (D. Ariz. Jan. 28, 2025)........................................................................................................................ 22

*Timothee v. Meta Platforms, Inc.*, No. 25-cv-05106-LB, 2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) ........................................................................................................................... 31

*United States ex rel. Hill v. Family Connections, Inc.*, No. 1:18-cv-00010-RGE-CFB, 2019 WL 13128560 (S.D. Iowa Nov. 20, 2019) ..................................................................... 28

*Weston v. Lefiti*, No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024)................................... 16

*Whitby v. Cerner Corp.*, No. 25-04087-CV-C-BP, 2026 WL 1520742 (W.D. Mo. Apr. 13, 2026) ........................................................................................................................ passim

*William v. Dukehealth*, No. 1:22-CV-727, 2024 WL 898051 (M.D.N.C. Mar. 1, 2024) .............. 15

*Wilson v. Lamp*, 995 F.3d 628 (8th Cir. 2021) ............................................................................. 26

*Wood ex rel. U.S. v. Applied Rsch. Assocs., Inc.*, 328 F. App'x 744 (2d Cir. 2009)...................... 30

*Woss, LLC v. 218 Eckford, LLC*, 959 N.Y.S.2d 218 (N.Y. App. Div. 2013) ................................ 32

*Zean v. Fairview Health Servs.*, 858 F.3d 520 (8th Cir. 2017) .......................................... 2, 18, 29

**Statutes**

18 U.S.C. § 2510.......................................................................................................................... 14

18 U.S.C. § 2511 ..................................................................................................................... passim

**Other Authorities**

N.Y. Gen. Bus. Law. §§ 349 (McKinney 2026)........................................................................ 21, 23

Restatement (Second) of Torts § 652B ................................................................................. 25, 27

**INTRODUCTION**

Plaintiff's claims are foreclosed in their entirety by controlling authority. The Eighth Circuit has held that plaintiffs raising Wiretap Act and other tort claims relating to ordinary web browsing activity, as alleged here, have not suffered an injury-in-fact and cannot establish standing. *See Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 538–39 (8th Cir. 2024). Nor does Plaintiff state a valid claim for relief. A well-developed body of Wiretap Act caselaw makes clear that website operators such as Grinnell may collect and/or share web-browsing information provided by a website visitor in the course of the communication constituting the web-browsing experience. Such allegations also fail to state a claim under New York statutory law or under the common law.

**FACTUAL BACKGROUND**[1]

Grinnell is a private, liberal arts college located in Grinnell, Iowa. (Compl. ¶ 2, ECF No. 1.) Grinnell operates a website, http://www.grinnell.edu/, where it provides information to the public about its educational mission and offerings. (Compl. ¶ 3.)

The display of a website upon a user's browser is the product of an exchange of information between the user's computer and the website's server. (*See* Compl. ¶ 21–36.) Visitors to Grinnell's website communicate directly with Grinnell regarding their browsing activity. (Compl. ¶ 39.) On the Internet, the "constant back-and-forth stream of requests and responses between a user[] . . . and a website . . . provide a perfect snapshot of everything a user does (or not do) on a website, when and how they do it, and with what software and hardware." (Compl. ¶ 37.)

Grinnell's website makes certain representations to users regarding the data generated from a user's visit to Grinnell's website. When a user visits Grinnell's website, the website displays a

---

[1]    In describing or referring to the allegations contained within the Complaint, Grinnell does not admit the truth of any such allegations.

banner at the bottom of the screen, referred to by Plaintiff as the "Cookie Banner," that reads:

> We use cookies to enable essential services and functionality on our site, enhance your user experience, and provide better service through personalized content, collect data on how visitors interact with our side, and enable advertising services.
>
> To accept the user of cookies and continue on to the site, click "I Agree." For more information about our use of cookies and how to opt out, please refer to our website privacy policy."

(*E.g.*, Compl. ¶ 4.) The "Cookie Banner" then presents two buttons, one labeled "I Agree" and the other labeled "Privacy Policy." (*E.g.*, Compl. ¶ 4.) Selection of the "I Agree" button disables the Cookie Banner. (Compl. ¶ 49.) Selection of the "Privacy Policy" button takes the user to a separate webpage, available at https://www.grinnell.edu/policies/privacy, displaying a Privacy Statement. The Cookie Banner does not force a user to select either of these two buttons. Users may disregard the Cookie Banner and continue to browse Grinnell's website. (*See* Compl. ¶ 12.)

The Privacy Statement contains Grinnell College's Privacy Policy (the "Privacy Policy"). A true and accurate copy of the Privacy Policy, which was last revised on March 25, 2021, is contained within Exhibit A.[2] The Privacy Policy states, in relevant part, as follows:[3]

> If you view our website, apply to Grinnell as a student, employee, or faculty member, enroll at Grinnell, make a donation, complete any online or hardcopy forms, or utilize any of the third-party systems or services that we use, you should be aware that we will collect certain personally identifiable data from you ("Personal Data"). Grinnell respects your privacy and is committed to protecting your Personal Data and keeping it secure. This statement explains how and why we collect Personal Data from or about you, how we use it, when and why we share it

---

[2] *See, e.g.*, *Zean v. Fairview Health Servs.*, 858 F.3d 520, 527 (8th Cir. 2017) (noting a court may examine a contract at issue when deciding a motion to dismiss and does not have to accept as true a party's interpretation of that contract); *Leveke v. Hearst Props., Inc.*, 764 F. Supp. 3d 817, 826 (S.D. Iowa 2025) ("It is well established that the Court may consider materials outside the pleadings that are 'necessarily embraced by the complaint.'"). The Complaint contains allegations about the contents of the Privacy Policy. (Compl. ¶ 50.)

[3] The text of the Privacy Policy, available at https://www.grinnell.edu/policies/privacy, contains live hyperlinks to other websites as indicated herein and in Exhibit A. Those hyperlinks have been removed for purposes of this filing.

with others, how we secure it, and what rights and choices you have in relation to your Personal Data.

**Website (www.grinnell.edu)**

When you use our website, we may collect the following Personal Data from you: (i) personal information, such as your name, mailing address, email address, phone number, and student ID number (if you are a student or former student of Grinnell); and (ii) web analytical information collected automatically when you interact with our website, such as your IP address, browser type, internet service provider, and clickstream data. . . .

**Cookies**

Unless you take steps to browse the internet anonymously, or opt out, Grinnell College, similar to most institutions and organizations on the internet, tracks web-browsing patterns to inform our understanding of how our website is being used. Generic information is collected through the use of "cookies," which are text files placed on your computer to evaluate usage patterns so that we can improve both content and distribution.

We use cookies to enable essential services and functionality on our site, enhance your user experience, provide a better service through personalized content, collect data on how visitors interact with our site, and enable advertising services. You may refuse the use of cookies by selecting the appropriate settings on your browser; however, doing so may prevent you from using the full functionality of our website. If you would like to learn more about cookies, please refer to the following website: **http://www.allaboutcookies.org/**.

When you visit our website, we may collect some data on your browsing experience such as your IP address, the website page you visited, when you visited and the website page from which you were redirected. This information is used to gather aggregated and anonymous statistics with a view to improving our services and to enhance your user experience. We will keep the browsing history of your visit for a maximum of 13 months. This information will then be deleted.

**Google Analytics**

Some sections of our website use Google Analytics, a web analytics service provided by Google, Inc. Google Analytics uses cookies to help us analyze how users use our sites. The information generated by the cookie about your use of the website includes your IP address. This information will be transmitted to and stored by Google on its servers in the United States. . . .

By using this website, you consent to the processing of data about you by Google in the manner and for the purposes set out above. . . . Please visit the following pages    for    more    information    on    Google    Analytics **terms    of    use** and

3

Google's **privacy practices**. To opt out of Google web traffic data collection, you may alter your browser settings to refuse the use of cookies.

**Opting Out**

Google provides an **option** to **opt out of Google Analytics tracking**. Please note that on www.grinnell.edu, Google Analytics code is supplemented by "gat._anonymizeIp();" to ensure an anonymized collection of IP addresses (so called IP-masking).

You may opt your data out of our anonymized aggregated statistics by clearing your website cookie.

**Do Not Track Preferences**

*Do not track* is a function that allows visitors to opt out from being tracked by websites for any purpose including the use of analytics services, advertising networks and social platforms.

If you enable *do not track* in your web browser, Google Analytics will respect your choice. You will not be tracked. This is in addition to you opting-out of the aggregation and analysis of data for our website statistics.

If you have disabled all cookies from your browser, we will still collect some general data about your browsing (e.g., a record of a visitor to our website) but these data will be less accurate and your visit will not be tracked.

**Social Media and Third-party Cookies**

In addition to our cookies, cookies may be set by an organization other than us. These "third-party cookies" may, for example, originate from websites such as YouTube, Twitter, Facebook, or other social media services for which we have implemented "plug-ins" in our website. Since the cookie policies of these sites change over time, you should determine their policies by visiting the privacy policy pages of these sites directly.

We use social media platforms. Our presence in the Twitter, Facebook, Google, YouTube and LinkedIn communities strengthens our online presence and visibility.

Cookies are not set by our display of social media buttons to connect to those services when **www.grinnell.edu** website pages are loaded on your computer (or other devices) or from components from those services embedded in our web pages.

Ex. A.

Plaintiff alleges that Grinnell's website employs cookies and "other third-party tracking technologies," referred to as "Tracking Tools," to record information provided by users when

visiting Grinnell's website. (Compl. ¶ 5.) Plaintiff alleges that Tracking Tools, generally, collect "users' selections of links, buttons, forms, and other on-page elements, as well as information entered into search fields." (Compl. ¶ 6.) Plaintiff alleges that the data that Tracking Tools collect "*may* include webpages viewed, academic or admissions-related content accessed, forms submitted, and users' interactions with Website content; inferred interests, preferences, age, location, or other characteristics based on user behavior and content engagement; and personal, device, and technical identifiers such as device type, operating system, and browser type." (Compl. ¶ 6 (emphasis added).) Plaintiff further alleges that the data that could be collected by Tracking Tools "includes persistent identifiers that enable recognition of users across sessions and websites,"[4] as well as "users' email addresses, and approximate geolocation information derived from IP addresses or similar signals." (Compl. ¶ 6.) The Complaint uses the term "Sensitive Information" to refer "collectively" to the data that "Tracking Tools" may collect. (Compl. ¶ 6.)

Plaintiff alleges Grinnell's website employs "Tracking Tools" regardless of whether or not the user selects the "I Agree" option within the "Cookie Banner." (Compl. ¶¶ 7–8.) Plaintiff alleges Grinnell's website employs so-called "Tracking Tools" that convey user data to TikTok, Google, Meta, Reddit, and Snap. (Compl. ¶¶ 5–7.)

Plaintiff alleges that on one occasion in 2024, he visited Grinnell's website to read the text displayed on the website. (Compl. ¶ 12.) Plaintiff alleges that when he visited Grinnell's website, he did not select the "I Agree" option within the "Cookie Banner" and continued to browse the website. (Compl. ¶ 12.) Plaintiff alleges that Grinnell deployed "Tracking Tools," including cookies, which "disclosed the substance of [Plaintiff's] communications with the Website,

---

[4]    This language presumably refers to IP addresses, which are unique addresses that identify individual devices and are an "essential part of how the internet works." (*See* Compl. ¶¶ 24–26.)

including the webpages he viewed, such as information about political science, together with identifiers and metadata." (Compl. ¶ 19.) Plaintiff alleges that Grinnell captured this data for itself and allowed for the transmission of this data to third-parties whose "Tracking Tools" were operable on Grinnell's website. (Compl. ¶ 19.) Plaintiff alleges generally that his "Sensitive information was intercepted and disclosed without his consent." (Compl. ¶ 19.)

Plaintiff does not allege that Grinnell solicited Plaintiff's visit to Grinnell's website. (Compl. ¶ 11.) Plaintiff does not allege that he entered any direct user inputs on Grinnell's website other than selecting pages to browse and reading the material contained thereupon. (Compl. ¶ 233.) For example, Plaintiff does not allege that he input any search terms, his name or contact information, financial information such as credit card or bank account numbers, or personal health information on Grinnell's website. Plaintiff does not allege that he provided Grinnell with his email address, or that Grinnell obtained Plaintiff's email address. (Compl. ¶ 233.) Plaintiff does not allege any other facts regarding any interactions he has ever had with Grinnell or even any other visits to Grinnell's website besides the visit in 2024 identified in the Complaint.

## ARGUMENT

### I.    Plaintiff does not possess Article III standing.

"Article III of the Constitution confines federal courts' judicial power to the resolution of 'Cases and Controversies.' For a case or controversy to exist, the plaintiff must have a personal stake in the lawsuit—a requirement that courts call 'standing.'" *Jones*, 124 F.4th at 538 (cleaned up). To establish standing at the pleading stage, the pleader must allege facts that plausibly suggest "(1) the plaintiff has suffered an injury in fact; (2) the claimed injury is 'fairly traceable' to the defendant's alleged conduct; and (3) the relief sought will redress the claimed injury." *Butler v.*

*U.S. Bancorp*, No. 24-CV-03700 (JMB/SGE), 2026 WL 883904, at *2 (D. Minn. Mar. 31, 2026) (quoting *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017)).

A plaintiff "must plead facts that demonstrate, among other things, that she suffered an injury that is 'concrete' and 'real,' not merely 'abstract.'" *Jones*, 124 F.4th at 538 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 340 (2016)). This injury is most often a "tangible injury (such as the loss of money or personal injury)." *Whitby v. Cerner Corp.*, No. 25-04087-CV-C-BP, 2026 WL 1520742, at *4 (W.D. Mo. Apr. 13, 2026). "Intangible harms may constitute concrete injuries if they bear a 'close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Butler*, 2026 WL 883904, at *3 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)); *Whitby*, 2026 WL 1520742, at *4 (similar)). Courts must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Butler*, 2026 WL 883904, at *2 (quoting *Popa v. Microsoft Corp.*, 153 F.4th 784, 790–91 (9th Cir. 2025)).

Where individual internet users allege unauthorized disclosure of web-browsing data, courts typically compare the alleged harms to the common law tort of intrusion upon seclusion. *See, e.g.*, *Jones*, 124 F.4th at 539; *Butler*, 2026 WL 883904, at *3; *Whitby*, 2026 WL 1520742, at *5; *Adams v. PSP Grp., LLC*, 691 F. Supp. 3d 1031, 1040–1042 (E.D. Mo. 2023); *see also, e.g.*, *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423, 431–34 (3d Cir. 2026); *Popa*, 53 F.4th at 791; *Cook v. Gamestop, Inc.*, 148 F.4th 153, 160–162 (3d Cir. 2025); *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *4 (C.D. Cal. Apr. 1, 2026); *Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787, at *3–5 (E.D. Pa. Aug,. 25, 2025); *Andrews v. Prisma Health*, No. 6:23-CV-03153-JDA, 2024 WL 3861384, at *4 (D.S.C. Aug. 16, 2024); *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 228 (M.D. Pa. 2023). Intrusion upon seclusion

7

requires "an intentional intrusion into a matter the plaintiff has a right to expect privacy," in a manner that would be highly offensive to a reasonable person. *E.g.*, *Koeppel v. Spiers*, 808 N.W.2d 177, 181 (Iowa 2011); *Jones*, 124 F.4th at 539 ("Missouri courts view 'the existence of a secret and private subject matter' as an element of this tort." (citation omitted)); *but see Poppel v. Est. of Archibald*, No. 1:19-CV-01403 (ALC), 2020 WL 2749719, at *9 (S.D.N.Y. May 27, 2020) ("New York has consistently refused to recognize a common law right of privacy, and hence there is no cause of action of intrusion upon seclusion under New York law.").

As the cases cited above illustrate, "plaintiffs who fail to specifically allege facts to establish the disclosure of highly sensitive data" typically lack standing to sue defendants under the Wiretap Act or for related torts. *E.g.*, *Butler*, 2026 WL 883904, at *3–4. The Eighth Circuit's controlling opinion in *Jones* identifies the relevant distinctions:

> Jones does not allege, for example, that session-replay technology captured her inputting and then deleting personal information like her social security number, medical history, bank account figures, or credit card information. She doesn't allege that it recorded any of her contact information or even her name. Nor does she allege that it hijacked her camera and watched her in her home as she surfed the web. . . .
>
> She mentions that her communications included things like "mouse movements, clicks, [and] keystrokes," but we don't understand how the movements of a cursor or a person's general navigation across a website conveys any information that a customer could reasonably expect to keep private from the website owners themselves. The situation is akin to the commonplace use of a security camera at a brick-and-mortar store to record customers as they shop . . . . But no reasonable customer at a brick-and-mortar store could claim a privacy interest in her general movements and activities in the public parts of that store. We therefore join the **overwhelming number of district courts** to hold that plaintiffs lack standing in cases like these where they don't allege the interception of private information.

*Jones*, 124 F.4th at 539 (emphasis added). The Eighth Circuit cited with approval a dismissal order in *Arndt v. Gov't Emps. Ins. Co.*, 750 F. Supp. 3d 518 (D. Md. 2024), where the district court reasoned: "Plaintiff cannot establish a concrete injury based on Defendant's alleged collection of mere website activity, such as mouse movements, keystrokes and clicks, search terms, or content

8

viewed by Plaintiff on Defendant's website. Such information does not convey any personal, private, or identifying information." *Id.* at 528 (listing 22 categories of personal data that were not "sufficiently 'intimate or personal' to justify a legitimate expectation of privacy" including name, birthdate, zip code, marital status, details about vehicle and home ownerships, education, spouse's name, email and phone numbers, among others).

Consistent with *Jones*, courts routinely require a plaintiff allege the unauthorized use or disclosure of highly sensitive information, such as personal financial information like a credit card number, or protected health information, to establish standing. *See, e.g.*, *In re BPS Direct, LLC*, 175 F.4th at 433 (finding no standing for plaintiffs who alleged unauthorized capture of "their clicks, scrolls, and searches" and who "entered no personal or sensitive information," but finding standing for plaintiffs who "entered their complete credit card or debit card numbers"); *Whitby*, 2026 WL 1520742, at *5–6 (finding that allegations that defendant healthcare patient portal provider's use of Google Analytics to track users' IP addresses and browsing behavior were ***not*** sufficient to confer standing for Wiretap Act claims where " no actual medical information was conveyed," and following *Jones*); *Butler*, 2026 WL 883904 at *3–4 (collecting cases relating to claims arising from use of Meta Pixel); *cf. In re SuperValu, Inc.*, 870 F.3d 763, 769-71 (8th Cir. 2017) (holding that plaintiffs asserting various tort claims against retailer arising from theft of plaintiffs' credit card numbers in data breach failed, without more, to sufficiently allege injury in fact at the pleading stage).

Plaintiff alleges that he browsed Grinnell's website once and that Grinnell employed technology that collected data regarding his browsing activity on Grinnell's website. (Compl. ¶ 19.) Plaintiff's alleged injury derives from his belief that "the substance of [his] communications with [Grinnell's] Website," namely, "the webpages he viewed . . . together with identifiers and

related metadata" constitutes "Sensitive Information" that he did not intend to disclose to third parties.[5] (Compl. ¶¶ 19, 68.) Court after court, including the Eighth Circuit, has found that such allegations do not suffice to establish an injury-in-fact necessary to confer standing. *See, e.g.*, *Jones*, 124 F.4th at 539 (holding that unauthorized disclosure of a user's browsing activity data was insufficient to establish standing); *Whitby*, 2026 WL 1520742 at *5–6 (finding that unauthorized collection of a user's browsing activity and IP addresses did not confer standing); *Butler*, 2026 WL 883904 at *3–4 (finding no standing where allegations of unauthorized dissemination of unspecified "personal information" entered on a website "do not implicate specific 'highly offensive' information"); *Adams*, 691 F. Supp. 3d at 1042 (finding that allegations that the defendant "tracked and recorded her clicking buttons and links on its website in order to obtain the physical location of one of Defendant's stores" did not establish standing); *see also, e.g.*, *In re BPS Direct, LLC*, 175 F.4th at 433 ("[T]hese . . . plaintiffs could not plausibly allege that their clicks, scrolls, and searches for outdoor products on BPS's websites were private.").

Just as an individual entering a store communicates their presence in the store, Plaintiff's allegations concern information he could not reasonably expect to keep private when browsing the internet, such as his IP address. *See Jones*, 124 F.4th 539 (making this analogy). The case law is also clear that Plaintiff's attempt to affix the label of "Sensitive Information" upon data whose

---

[5]    The term "Sensitive Information" is defined in a broad and open-ended manner based on what Plaintiff alleges the term "may include." (Compl. ¶ 6.) The term is defined as data collected by "Tracking Tools," which is itself defined in an open-ended manner as "cookies and other third-party tracking technologies." (Compl. ¶¶ 5, 6.) The Complaint uses these open-ended defined terms pervasively, making it difficult to decipher precisely what of Plaintiff's actual information Plaintiff has alleged has been captured other than "Plaintiff's interactions with the Website" and his IP address. (Compl. ¶¶ 26, 175; *see also* Compl. ¶ 233 (referring to "pages [Plaintiff] viewed, searches conducted via the Website, browsing activity, and other interactions with Website features").) Plaintiff does not allege any interactions with the Website other than that he read certain informational webpages. (Compl. ¶ 11.) He does not allege he manually input any data.

10

exchange is an "essential part of how the internet works," *see* Compl. ¶ 25, provides no assistance in establishing standing. *See, e.g.*, *Whitby*, 2026 WL 1520742 at *5 ("Labeling [the user's web browsing activity and IP address] as 'health information' does not make it so.").

Plaintiff may attempt to distinguish the weight of authority, especially within the Eighth Circuit, by pointing to one of two lines of out-of-circuit cases. But neither line of cases controls in this Court. And the facts alleged in the Complaint would not suffice to establish standing even if the Court were to find this out-of-circuit authority to be persuasive.

First, certain Third Circuit authority suggests that a plaintiff alleging a defendant's capture of online browsing activity may possess standing—where standing might otherwise not exist— when such capture is the result of some sort of broken promise to the user. In two early opinions concerning standing to sue for unauthorized capture of web-browsing data, the Third Circuit held "unlawful disclosure of legally protected information" conferred Article III standing. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 269, 272–74 (3d Cir. 2016); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 134–35 (3d Cir. 2015) ("*Google I*") (similar).[6] After the Supreme Court's 2021 opinion in *TransUnion* clarified the analysis for assessing standing to sue for intangible harms, the Third Circuit limited these holdings on the basis that they involved defendants who had promised *not* to capture web-browsing data from users. *Cook*, 148 F.4th at 161–62 (applying *TransUnion*, 594 U.S. at 426–27, to reject the plaintiff's argument that all user web-browsing data and/or electronic communications are presumptively private). In *Nickelodeon*, the website operator "stated it would not collect the personal information of children visiting Nick.com, but did so anyway." *Id.* at 162 (citing *Nickelodeon*, 827 F.3d at 269).

---

[6]    The panels in *Nickelodeon* and *Google I* both affirmed dismissal for failure to state claims for violation of the Wiretap Act. *Nickelodeon*, 827 F.3d at 275–76; *Google I*, 806 F.3d at 145.

In a later opinion in the same action involving Google, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019) ("*Google II*"), the plaintiffs alleged that Google "tracked their personal internet browsing information in violation of the [its] own promises not to do so." *Cook*, 148 F.4th at 162 (quoting *Google II*, 934 F.3d at 325).

But the Eighth Circuit has not endorsed this distinction, and the opinion in *Jones* presents a far simpler analysis. Plaintiffs lack standing "where they don't allege the interception of private information." *Jones*, 124 F.4th at 539. This is because "a person's general navigation across a website" does not "convey[] any information that a customer could reasonably expect to keep private." *Id.* The Eighth Circuit's approach makes sense. Whether Plaintiff's alleged harm bears a close relationship to the historically cognizable harm of intrusion upon seclusion does not turn on whether the website made a promise not to collect information, when the information (as here) does not implicate a privacy interest in the first instance. *See id.* at 538–39; *Butler*, 2026 WL 883904 at *3–4. The inquiry ends there. As explained above, *Jones* forecloses Plaintiff's claims.

The Complaint would also fail to establish standing under *Nickelodeon* and its progeny. As explained below, the Cookie Banner on its face neither promises not to record user web-browsing data nor states that users must affirmatively opt-in to tracking. *See infra* Section II.C. And the Privacy Policy, incorporated by reference and linked to in the Cookie Banner, actually makes clear that Grinnell may capture the information allegedly captured in the Complaint. (Ex. A.) As in *Cook*, the Defendant "made no promise to refrain from collecting information, and, in fact, disclosed what information it would collect." *See Cook*, 148 F.4th at 162.

The second line of out-of-circuit cases concerns profile creation by social media or other online platforms. In *In re Facebook, Inc. Internet Tracking Litigation*, another pre-*TransUnion* opinion, the Ninth Circuit examined allegations about a Facebook plug-in that "track[ed] users'

12

browsing histories when they visit third-party websites, and then compile[d] these browsing histories into personal profiles which are sold to advertisers . . . [even] after its users had logged out of Facebook." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020). The Ninth Circuit found standing where the plaintiffs plausibly alleged that as a result of the conduct at issue, "Facebook gained a cradle-to-grave profile without users' consent," and did not disclose tracking of logged-out users. *Id.* at 599–60.

A more recent Ninth Circuit panel has cast doubt on whether *In re Facebook* remains good law following *TransUnion* without resolving the question. *Popa*, 153 F.4th at 794 (suggesting *In re Facebook* may, at best, be limited to its facts). *Popa* involved allegations much closer to those alleged in this case, and held there was no standing. *Id.* at 792 (finding no standing to sue individual website proprietor based on collection of web-browsing data, making the same analogy to a shopper's movements in a physical store that the Eighth Circuit made in *Jones*). Plaintiff does not, and cannot, allege that Grinnell has created, or could possibly create, a "cradle-to-grave profile of users." Plaintiff's only alleged interaction with Grinnell is browsing its website once. Nor can Plaintiff bootstrap himself into a position of possessing standing by tacking on allegations about what third-parties such as TikTok or Meta *might* do with website browsing data Plaintiff agreed to provide to Grinnell. *See*, *e.g.*, *Butler*, 2026 WL 883904, at *3–4 (collecting cases finding no standing for website visitors filing suit against website proprietors based on alleged use of Meta Pixel); *In re BPS Direct, LLC*, 175 F.4th at 433 ("The allegations about the Session Replay Code Providers' ability to aggregate information from BPS's websites to users' 'fingerprints' . . . state[] only a theoretical path to injury, not an actual one.").

Plaintiff's lack of standing dooms all of his claims, and the Complaint should be dismissed.

13

**II.    Plaintiff does not state a claim for violation of the federal Wiretap Act.**

Plaintiff's claim under the Electronic Communications Privacy Act (the "Wiretap Act"), fails as a matter of law for at least four reasons. First, Plaintiff he has not plausibly alleged that the contents of an electronic communication were intercepted by Grinnell. *See* 18 U.S.C. §§ 2510(4), 2511(1).  Second, Grinnell was a party to the communications Plaintiff alleges were unlawfully intercepted. *See* 18 U.S.C. § 2511(d). Third, Grinnell consented to any alleged sharing of its communications with Plaintiff created in the course of Plaintiff's browsing of the website. *See* 18 U.S.C. § 2511 (2)(d). Finally, Plaintiff consented to the practices alleged in the Complaint. *See id.*

> **A.    Plaintiff does not plausibly allege Grinnell intercepted contents of an electronic communication.**

To sufficiently plead a prima facie case under the Wiretap Act, a plaintiff must allege, among other elements, interception of "contents" of an electronic communication. "Contents" is defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). The substance of a communication is distinct from the data comprising the "technical information necessary" to make the electronic communication take place. *Apel v. T-Mobile USA, Inc.*, No. 3:24-cv-00098-RGE-WPK, 2025 WL 2222737, at *3 (S.D. Iowa July 30, 2025). As befits the statute's name and the context of its enactment, the Wiretap Act "protects what is being said rather than the digital or mechanical tools or trails of how an electronic communication is being relayed." *Id.*

As this Court has recognized, information such as a telephone caller's phone number, provider, and other information or data inherently exchanged in the process of connecting phone calls are not the substance of a communication. *Id.*; *see also Gilday v. Dubois,* 124 F.3d 277, 296 n.27 (1st Cir. 1997) (holding "electronic signals relating to the PIN of the caller, the number called, and the date, time and length of the call" are not contents of a communication). So here, too,

14

Plaintiff alleges that information such as an IP address or an HTTP request is inherently exchanged in the process of displaying a web page. (Compl. ¶¶ 6, 62, 68, 131, 149, 233.) Plaintiff does not allege he personally provided Grinnell with any substantive information about anything. He did not purchase any products, fill out any forms, or enter any text. He browed a website once. (*See* Compl. ¶ 11.) He has not alleged Grinnell intercepted "contents" of any communication.

      **B.**        **Grinnell is protected by the Party Exception to the Wiretap Act.**

Under the "Party Exception" to the Wiretap Act, if Grinnell was a party to the electronic communication and did not intercept Plaintiff's electronic communications for "criminal or tortious" purposes, it is not liable. *See* 18 U.S.C. § 2511(2)(d).

Grinnell was clearly a party to Plaintiff's electronic communications with Grinnell in the course of browsing the website. *See, e.g.*, *Jurgens v. Build.com, Inc.*, No. 4:17–cv–00783–AGF, 2017 WL 5277679, at *5 (E.D. Mo. Nov. 13, 2017) (holding defendant was the intended recipient of plaintiff's electronic communications made on its website); *William v. Dukehealth*, No. 1:22-CV-727, 2024 WL 898051, at *8 (M.D.N.C. Mar. 1, 2024) (same). "[A] communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *Jurgens*, 2024 WL 898051, at *6 (citation omitted). Plaintiff admits throughout the Complaint that he purposefully visited and interacted with Grinnell's website, which resulted in electronic communications being sent to Grinnell. *See, e.g.*, Compl. ¶¶ 202, 236. Thus, Grinnell was the intended recipient of Plaintiff's electronic communications and is protected from liability by the Party Exception. *See Jurgens*, 2024 WL 898051, at *8; *Google I*, 806 F.3d at 142–43.

Plaintiff does not allege that Grinnell's interception of any communications was for a criminal or tortious purpose. For the Party Exception not to apply, the intentional criminal or tortious act must be both "independent of the intentional act of recording" and the "primary

15

motivation" or "determinative factor" for the defendant's alleged conduct. *E.g.*, *Joiner v. NHL Enters., Inc.* No. 23-CV-2083 (LAK) (BCM), 2025 WL 2846431, at *8 (S.D.N.Y. Aug. 29, 2025) (citations omitted) (noting that alleged intrusion upon seclusion is not "independent" of the Wiretap Act violation); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 275–76 (3d Cir. 2016); *J.S. v. Spring Fertility Holdings, LLC*, No. 5:24-cv-07374-EJD, 2026 WL 1483490, at *3 (N.D. Cal. May 27, 2026); *Brown v. Learfield Commc'ns, LLC*, No. 1:23-CV-00374-DAE, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024); *Okash v. Essentia Health*, Civ. No. 23-482 (JRT/LIB), 2024 WL 1285779, at *4–5 (D. Minn. Mar. 26, 2024). Plaintiff does not allege that his electronic communications were intercepted by Grinnell for an intended independent tortious or criminal purpose. *See* Compl. ¶¶ 223–243. Because the Party Exception applies, Plaintiff fails to state a Wiretap Act claim as a matter of law.

> **C.      Grinnell is protected by the Consent Exception to the Wiretap Act.**

The Wiretap Act carves out another statutory exception "where one of the parties to the communication has given prior consent" and such alleged interception was not for a criminal or tortious purpose. 18 U.S.C. § 2511(2)(d). This statutory exception "establishes a one-party consent defense: an interception is not unlawful if at least one party gave prior consent" with the same crime-tort exception as discussed above. *So v. Hyatt Hotels, Corp.*, No. 25 C 10483, 2026 WL 1235036, at *3 (N.D. Ill. May 5, 2026); *see also Weston v. Lefiti*, No. 24-541, 2024 WL 4579237, at *1 (9th Cir. Oct. 25, 2024); *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-CV-00382-KDB-SCR, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025). Plaintiff's claim fails as a matter of law because *both* Grinnell and Plaintiff consented to the practices alleged in the Complaint.

### 1.      Plaintiff admits Grinnell consented to the allegedly tortious conduct.

Grinnell's website explained to users via the Cookie Banner and the Privacy Policy that it may collect user data. (Compl. ¶ 4, Ex. A). Grinnell, a party to the communication, consented for any electronic communications it received to be collected and used. *See* 18 U.S.C. § 2511(2)(d); *Brown*, 2024 WL 3676709, at *3–4 (acknowledging that the defendant website operator was a party to the communication and consented to the interception of communications sent to it). Plaintiff's allegations about representations in the Cookie Banner cannot defeat Grinnell's consent as a party to the communication. *See Google I*, 806 F.3d at 143 ("There is no statutory language indicating this [exception] excludes intended recipients who procured their entrance to a conversation through a fraud in the inducement . . . ."). Plaintiff's claim fails as a matter of law.

### 2.      Plaintiff also consented to the allegedly tortious conduct.

Plaintiff himself also consented to the conduct that Plaintiff alleges gives rise to his Wiretap Act claim by browsing Grinnell's website upon inquiry notice of Grinnell's Privacy Policy. Grinnell's Privacy Policy is a "browsewrap" agreement where Plaintiff consented to its terms by "using or accessing" Grinnell's website. *See Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021) (citation omitted) (defining browsewrap agreements). A browsewrap agreement does *not* require the user to explicitly assent by clicking an "I agree" button. Instead, the agreement "imputes assent through the user's performance of some specific act" such as "'using or accessing' a website." *Id.* at 863 (citation omitted). "The terms themselves are also usually provided through a hyperlink rather than directly to the user." *Id.*

The Privacy Policy states in relevant part: "If you view our website, . . . you should be aware that we will collect certain personally identifiable data from you ("Personal Data")." Ex. A. The Privacy Policy goes on to explain that the type of Personal Data that may be collected includes

17

personal contact information such as name, email address, student ID number, and "web analytical information collected automatically when you interact with our website, such as your IP address, browser type, internet service provider, and clickstream data. . . ." Ex. A. It also explains Grinnell's use of cookies: "Unless you take steps to browse the internet anonymously, or opt out, Grinnell College, similar to most institutions and organizations on the internet, tracks web-browsing patterns to inform our understanding of how our website is being used" and "[i]n addition to our cookies, cookies may be set by an organization other than us." Ex. A.

Plaintiff contends that "the Cookie Banner represents to users that the Website will not use cookies to track users until they click the "I Agree" button. (Compl. ¶ 4.) But that is not what the Cookie Banner says.[7] The Cookie Banner states that Grinnell uses cookies on its website. (Compl. ¶ 4.) It refers users "[f]or more information about our use of cookies and to opt out" to Grinnell's "Privacy Policy" and provides a link to the Privacy Policy." (Compl. ¶¶ 4, 49.) It states that users may accept the use of cookies by selecting "I Agree," at which point the Cookie Banner disappears from the user's screen. (Compl. ¶ 4.) The Complaint correctly states that users such as Plaintiff are not required to select *either* option presented by the Cookie Banner. (Compl. ¶ 19.) Plaintiff alleges he "did not interact with [the Cookie Banner] in any manner" after being shown the Cookie Banner. (Compl. ¶ 19.) Instead, he continued to browse Grinnell's website. (Compl. ¶ 19.) The Cookie Banner, therefore, is consistent with Grinnell's Privacy Policy in that "no affirmative action is required" for a user to accept Grinnell's terms by browsing the website. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) ("The defining feature of browsewrap agreements

---

[7]    To the extent Plaintiff's allegation about what the Cookie Banner "represents to users" is contradicted by the plain terms of Grinnell's website, Plaintiff's allegation is a "legal conclusion couched as a factual allegation" that is entitled to no weight in deciding a motion to dismiss. *See, e.g.*, *Zean*, 858 F.3d at 527 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." (citation omitted)).

Based on these terms, "a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cookies including by third parties." *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025). A more granular disclosure of the type of information collected was not required for Plaintiff to consent to the use of cookies. *See id.*; *Sisti v. Bosley Inc.*, No. 2:25-cv-10669-JFW-DFMx, 2026 WL 1223927, at *6 (C.D. Cal. Apr. 27, 2026) ("The text of the two policies makes clear that third party cookies may be placed when an individual uses Bosley's website, that those cookies may enable third parties to identify the user, and that the information collected from the individual's use of the website may be used for advertising purposes."). The Privacy Policy is a browsewrap agreement. *See Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1025–26 (C.D. Cal. 2023) (holding terms within a pop-up banner fell into "the browsewrap agreement category"). The presence of an "I Agree" button on the Cookie Banner that the user is **not** required to select does not convert Grinnell's Privacy Policy to a clickwrap agreement. *See Nguyen*, 763 F.3d at 1175–76 (defining a clickwrap agreement as one "in which website users are **required** to click on an 'I agree' box after being presented with a list of terms and conditions of use" (emphasis added)).

Validity of a browsewrap agreement "depends on whether there is adequate notice to create 'actual or constructive knowledge of [the] website's terms and conditions.'" *Foster*, 15 F.4th at 863 (alteration in original) (quoting *Nguyen*, 763 F.3d at 1176). A user can either have actual or, as relevant here, inquiry notice of a browsewrap agreement. *Id.*

> [I]nquiry notice, depends on "whether the website puts a reasonably prudent user on inquiry notice of the terms." Critical is the website's overall design and content, including whether "the existence of [the relevant] terms" are "reasonably

conspicuous" to the user. If they are, then the user "is deemed to have notice of all facts that reasonable inquiry would disclose," including the terms themselves.

*Id.* at 864 (citations omitted) (second alteration in original).

The Complaint establishes Plaintiff had inquiry notice of Grinnell's Privacy Policy. Plaintiff alleges that visitors to Grinnell's website are confronted with a "Cookie Banner" that "provides a 'Privacy Policy' button directing users to additional information regarding Defendant's use of cookies and purported opt-out information." Compl. ¶ 49; *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121 (Ill. Ct. App. 2005) (holding the Terms and Conditions of a website were binding on a user because a hyperlink to the contract "appeared on numerous Web pages the plaintiff completed"). The Cookie Banner appears within a black box with orange buttons on the bottom portion of the page, remains on the page unless the user selects one of the buttons, and states "[f]or more information about our use of cookies and how to opt out, please refer to our website privacy policy." Compl. ¶ 47. Plaintiff further alleged that Grinnell's website "immediately displayed" this Cookie Banner when he first accessed it. Compl. ¶ 47. Based on these allegations, Plaintiff has alleged that Grinnell's website "puts a reasonably prudent user on inquiry notice of the terms" and made the terms "reasonably conspicuous" by giving every user immediate notice of the Privacy Policy and access to its terms upon entry of the website. *See Foster*, 15 F.4th at 864. Thus, Plaintiff accepted the browsewrap Privacy Policy as he was on inquiry notice of its terms. *See Small Justice LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 197 (D. Mass. 2015) (holding a browsewrap agreement was valid when the terms were conspicuous on multiple screens and were displayed with contrasting colors). Because Plaintiff consented to the use of his electronic communications with Grinnell as part of browsing Grinnell's website, Plaintiff cannot state a Wiretap Act claim against Grinnell. *See* 18 U.S.C. § 2511(2)(d).

**III.    Plaintiff does not state a claim for violation of New York's Deceptive Act and Practices Act or False Advertising Law (Counts I, II).**

Claims brought under New York's Deceptive Act and Practices Act ("NYDAPA") and New York's False Advertising Law ("NYFAL") are evaluated under the same standard of recovery. N.Y. Gen. Bus. Law. §§ 349, 350, 350-a (McKinney 2026); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002). To establish a prima facie claim under either law, Plaintiff must show "that defendant is engaging in an act or practice that is deceptive or misleading [or constitutes false advertising] in a material way and that plaintiff has been injured by reason thereof." *Goshen*, 774 N.E.2d at 1195 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)). The alleged deception or false advertising "must be misleading to 'a reasonable consumer.'" *Id.* (quoting *Oswego*, 647 N.E.2d at 745). Here, Plaintiff's claims under the NYDAPA and NYFAL fail as a matter of law for two reasons: Plaintiff has failed to allege that he suffered an actual injury under the acts, and Plaintiff has failed to alleged that Grinnell's actions were materially misleading. *See* N.Y. Gen. Bus. Law. §§ 349, 350, 350-a.

**A.    Plaintiff has not plausibly alleged that he suffered an actual injury.**

To recover under the NYDAPA and NYFAL, Plaintiff must prove that he suffered an "actual injury" as a result of the alleged deception or false advertising. *See Noriega v. Abbott Lab'ys*, No. 23 Civ. 4014 (PAE), 2026 WL 1601501, at *32 (S.D.N.Y. June 4, 2026). This injury does not have to be pecuniary in nature, but Plaintiff must demonstrate more than that he was allegedly deceived. *See id.*; *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019).

New York courts have repeatedly held that allegations related to the collection and exposure of personal and allegedly private information, without more, "do not meet [the

21

NYDAPA's and NYFAL's] injury requirement."[8] *Cohen v. Casper Sleep, Inc.*, No. 17cv9325, 2018 WL 3392877, at *8 (S.D.N.Y. July 12, 2018); *see also, e.g.*, *Manning v. Pioneer Sav. Bank*, 55 N.Y.S.3d 587, 593 (N.Y. Sup. Ct. 2016) ("All that Plaintiffs have alleged is potential exposure of their personal information that has increased their risk of identity theft, not actual fraudulent charges."); *Mount v. PulsePoint, Inc.*, No. 13 Civ. 6592 (NRB), 2016 WL 5080131, at *11–13 (S.D.N.Y. Aug. 17, 2016) (concluding that allegations that defendant collected aggregate web browsing history did not establish an actual injury under section 349); *Smith v. Chase Manhattan Bank, USA*, 741 N.Y.S.2d 100, 102 (N.Y. App. Div. 2002) (holding that the alleged selling of customers' confidential information resulting in unwanted advertising did not qualify as an actual harm); *see also Greco v. Syracuse ASC, LLC*, 193 N.Y.S.3d 511, 514 (N.Y. App. Div. 2023) (holding, in a data breach case, plaintiff lacked standing when they failed to " alleg[e] that any of the information purportedly accessed by the unknown third party has actually been misused").

Here, Plaintiff has failed to allege an actual injury. Plaintiff alleges that the New York subclass "suffer[ed] injury in the form . . . the loss of control and value of their Sensitive Information and the unauthorized disclosure of Sensitive Information to Tracking Entities" and "suffer[ed] actual damages by depriving them of the ability to make informed choices about the

---

[8] A minority of courts have held that a plaintiff may suffer an injury under the NYDAPA and NYFAL based on collection of browsing data because the plaintiff is being denied the "benefit of the bargain." *See, e.g.*, *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *15 (W.D.N.Y. Mar. 19, 2024); *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *9 (D. Ariz. Jan. 28, 2025). However, these cases are distinguishable for several reasons. First, Grinnell never stated that it would not collect user data. *See supra* Section II.C; *Kane*, 2024 WL 1178340, at *3 (noting the defendant's privacy policy in this case informed users their information would be protected and never sold). Grinnell's Privacy Statement, together with the Cookie Banner, put Plaintiff on notice of the data collection practices Plaintiff alleges. *See* Ex. A. Plaintiff also does not allege that he made any monetary payment to Grinnell. *See Kane*, 2024 WL 1178340, at *3. Nor does this case involve highly sensitive and private information such as information regarding medical care. *See Strong*, 2025 WL 317552, at *1 (alleging defendant collected and distributed information regarding "confidential medical care").

collection and disclosure of their personal information and by subjecting them to unauthorized tracking and data sharing . . . ." Compl. ¶¶ 206, 218. These alleged injuries all revolve around the collection and disclosure of allegedly private information. *See, e.g.*, *Cohen*, 2018 WL 3392877, at *8 (holding the exposure of allegedly personal and private information was not enough to state a claim under either Act). More to the point, Plaintiff has failed to claim that he was harmed beyond Grinnell's alleged deception of collecting and using the information. *See Noriega*, 2026 WL 1601501, at *32 ("But 'the fact that a plaintiff was deceived is not, standing alone, an actual injury.'" (citation omitted)); *Mount*, 2016 WL 5080131, at *11–13 (holding New York has not recognized a privacy right to browsing history and an allegation regarding the collection of this information does not alleged an injury under the Acts). In accordance with New York law, Plaintiff's claims under the NYDAPA and NYFAL should be dismissed for failing to adequately plead an actual injury. *See* N.Y. Gen. Bus. Law §§ 349, 350, 350-a.

**B.       Plaintiff has not plausibly alleged that he was materially misled.**

Under New York law, "[a] defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances." *Italian Tile Marble & Granite, Inc. v. Floor & Decor*, No. 25-cv-3533 (DLI) (LKE), 2026 WL 1224045, at *3 (E.D.N.Y. May 5, 2026) (quoting *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 607 (2d Cir. 2024) (requiring plausible allegations that "a significant portion of the general consuming public or of targeted customers" would be misled (citation omitted))). A statement is material when it impacts an individual's "choice to participate in a transaction" and "it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." *Id.* "New York courts have dismissed claims for having failed to satisfy this element where a defendant fully disclosed the terms and conditions of an alleged deceptive

23

transaction that caused harm to the plaintiff." *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12–CV– 01058 (KAM), 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012).

First, for the reasons identified above, Grinnell's statement in the Cookie Banner was not materially misleading. *See supra* Section III.B.2. The Cookie Banner does not claim that a user will not be tracked unless they click "I Agree." (*See* Compl. ¶ 4 (showing the Cookie Banner).) Rather, it makes clear that a user can click "I Agree" to continue on the site or they can click the Privacy Policy for more information, including information on how to opt out. (Compl. ¶ 4.) The Cookie Banner does not state that affirmative user consent is required in order for Grinnell's website to use cookies or collect information, and the text is not capable of that interpretation. (Compl. ¶ 4.) As a matter of law, the Cookie Banner and Privacy Policy would not materially mislead a reasonable consumer. *See Italian Tile Marble & Granite, Inc.*, 2026 WL 1224045, at *3.

Further, Grinnell's use of cookies could not be materially misleading because Grinnell fully disclosed the "terms and conditions" of the allegedly deceptive transaction. *See Derbaremdiker*, 2012 WL 4482057, at *4 (holding statements are not materially misleading when they are fully disclosed to the plaintiff). The terms and conditions of the transaction at issue are provided by the Cookie Banner and Privacy Policy. (*See* Compl. ¶¶ 47–50.) Within both the Cookie Banner and Grinnell's Privacy Policy, Grinnell makes it clear that Grinnell uses cookies when users visit its website and these cookies will be used unless the user takes affirmative steps to opt out of their use. (Compl. ¶ 4; Ex. A.) Grinnell even explains why it uses cookies. (Compl. ¶ 4; Ex. A ("We use cookies to enable essential services and functionality on our site, enhance your user experience, provide a better service through personalized content, collect data on how visitors interact with our site, and enable advertising services.")). The conduct complained of by Plaintiff was disclosed by Grinnell. It is not actionable under the NYDAPA or NYFAL. *See Chufen Chen v. Dunkin's*

24

*Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) ("[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed[.]" (citation omitted)); *Sigall v. Zipcar, Inc.* No. 13 Civ. 4552(JPO), 2014 WL 700331, at *7 n.6 (S.D.N.Y. Feb. 24, 2014) (finding the plaintiff could not state a claim under the NYDAPA when the allegedly deceptive act was disclosed in the parties' agreement); *Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59, 61 (N.Y. App. Div. 2004) (holding the alleged conduct was contemplated by the parties' lease was "fully disclosed" and could not constitute a deceptive business practice).

## IV.    Plaintiff does not state a common law claim (Counts IV, V, VI).

Plaintiff asserts claims against Grinnell for invasion of privacy, fraud, and unjust enrichment under the common law. Each of these claims fail as a matter of law.

### A.    Plaintiff does not state an invasion of privacy claim.

Plaintiff does not identify under which state's common law he brings his invasion of privacy claim. Presumably this is because the law of New York, where Plaintiff is domiciled and where he accessed Grinnell's website, does not recognize such a claim. *See, e.g.*, *Joiner*, 2025 WL 2846431, at *10 ("New York . . . does not recognize the tort of 'intrusion upon seclusion'").[9]

Iowa, meanwhile, has adopted the Restatement (Second) of Torts with respect to invasion of privacy claims. *Koeppel*, 808 N.W.2d at 180–81. Invasion of privacy by means of intrusion upon seclusion[10] requires an intentional intrusion "upon the solitude or seclusion of another or his private affairs or concerns" where "the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. The defendant must "intrude[] into a private place" or "invade[] a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* cmt. c.

---

[9]    Grinnell does not take a position for purposes of this motion as to whether Iowa or New York applies to Plaintiff's state law claims, because the claims fail as a matter of law either way.

[10]    There are other flavors of this tort not relevant here. *See Koeppel*, 808 N.W.2d at 181.

Observation of a person in public or in the "open" is not intrusion upon seclusion. *E.g.*, *Wilson v. Lamp*, 995 F.3d 628, 633 (8th Cir. 2021).

Plaintiff has not pleaded facts that would plausibly suggest Grinnell intentionally intruded upon the solitude or seclusion of Plaintiff. The Complaint acknowledges that the act of querying and displaying a webpage on the Internet is a two-way communication between the user and the website provider. (Compl. ¶ 37.) This very exchange of information between a user and website provider—what Plaintiff describes as "incoming and outgoing requests and responses"—is, according to Plaintiff, the essence of what it means to browse a website. (Compl. ¶ 38.) Not only is information such as the user's IP address or the webpages the user reads *not* hidden from the website provider, this data is necessarily shared. (*See* Compl. ¶¶ 24–26, 37.)

Plaintiff does not allege that Grinnell hacked his computer to obtain private data. Plaintiff himself either provided the so-called "Sensitive Information" (*e.g.*, his IP address) to Grinnell in order to view Grinnell's website, or Plaintiff and Grinnell together *created* the information in the course of the exchange of information between himself and Grinnell (*e.g.*, Plaintiff's browsing activity). (*See* Compl. ¶ 37.) Grinnell did not initiate this exchange of information; Plaintiff did. (Compl. ¶ 11.) Plaintiff does not—and cannot—allege that the so-called "Sensitive Information" is confidential or kept private by him vis-à-vis Grinnell.

Website browsing information, in other words, is not a "private seclusion" or "private affair." "[C]licks, scrolls, and searches" on a website are not any more private than "the physical browsing countless shoppers do daily" in brick-and-mortar stores. *In re BPS Direct, LLC*, 175 F.4th at 433; *see also, e.g.*, *Jones*, 124 F.4th at 539 (holding browsing data resembles shopping at a brick-and-mortar store and "no reasonable customer at a brick-and-mortar store could claim a privacy interest in her general movements and activities in the public parts of that store"); *Popa*, 153 F.4th

at 791 (holding that allegations that defendant tracked users' website browsing behavior, without allegations that the defendant captured "embarrassing, invasive, or otherwise private information," were "quite different from the hypotheticals identified in the Restatement"); *Cook*, 148 F.4th at 159–60 (holding Plaintiff could not "plausibly allege that there was an intrusion of her solitude or seclusion as to her person or private affairs" because data regarding a user's web browsing activity was not "personal or sensitive"); *Delong¸* 2025 WL 2447787, at *5 ("It is widely understood that most online activity is not entirely private."); *Adams*, 691 F. Supp. 3d at 1041–42 (finding that allegation that defendant "tracked and recorded [plaintiff] clicking buttons and links on its website" was not an allegation that the defendant "intercepted her private communications or personal information"); *Massie v. Gen. Motors*, No. 21-cv-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("'Eavesdropping' on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury.").

The Complaint also does not allege facts sufficient to establish conduct that would be "highly offensive to a reasonable person." *See* Restatement (Second) of Torts § 652B. Any alleged recording of information such as "Plaintiffs' IP addresses, geolocation data, 'button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, [and] network requests'" is "simply not the type of highly offensive act to which liability can attach." *Oliver v. Noom, Inc.*, No. 2:22-CV-1857, 2023 WL 8600576, at *10 (W.D. Pa. Aug. 22, 2023) (quoting *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122 (W.D. Pa. 2019)); *see also, e.g.*, *Whitby*, 2026 WL 1520742 at *9 ("[A] website designer using computer tools to track activity on the website it designed is not utilizing improper means."); *Delong¸* 2025 WL 2447787, at *5 ("Internet users customarily volunteer their browsing

27

behavior to websites during normal internet use. The alleged data collection here is typical in the digital world, and the way it was allegedly done here [through Google Analytics] is not highly offensive.").[11] Accordingly, Plaintiff fails to state a claim for invasion of privacy.

### B.      Plaintiff does not state a fraud claim.

Fraud claims are subject to a heightened pleading standard to plead the circumstances of alleged fraud "with particularity." Fed. R. Civ. P. 9(b). This heightened pleading standard is meant to protect defendants from "baseless claims." *United States ex rel. Hill v. Family Connections, Inc.*, No. 1:18-cv-00010-RGE-CFB, 2019 WL 13128560, at *3 (S.D. Iowa Nov. 20, 2019).

The elements of fraud are: "(1) a material misrepresentation (2) made knowingly (scienter), (3) with intent to induce [the other party] to act or refrain from acting, (4) upon which the plaintiff justifiably relies, (5) with damages." *MHC Inv. Co. v. Racom Corp.*, 254 F. Supp. 2d 1090, 1096 (S.D. Iowa 2002). The elements under New York law are similar. *E.g.*, *Lama Holding Co. v. Smith Barney*, 668 N.E.2d 1370, 1373 (N.Y. 1996). Plaintiff fails to plausibly allege *each* element.

First, Plaintiff does not allege that Grinnell made a material misrepresentation. As explained above, Plaintiff's interpretation of the text of the Cookie Banner is not a tenable interpretation of Grinnell's actual statement. *See supra* Section II.B.2. The Cookie Banner **does not state** that "the Website will not use cookies to track users until they click the 'I Agree' button." (*See* Compl. ¶ 4.) The plain language of Grinnell's statements controls over Plaintiff's litigation

---

[11]     Plaintiffs cannot save their invasion of privacy claim by labeling Grinnell's Cookie Banner as a misrepresentation. As previously stated, the Cookie Banner is consistent with the terms of Grinnell's Privacy Statement. *See supra* II.B.2. Further, whether there was an alleged misrepresentation would not establish that Plaintiff possesses a sufficient expectation of privacy as to web browsing data. *See Garcia*, 2026 WL 925028, at *5 (finding that "tracking technologies" may result in highly offensive conduct only where the information collected is "especially sensitive," such as health or financial information, or is "so broad . . . that it renders the tracking highly offensive").

gloss. *See Zean*, 858 F.3d at 527; *Neubauer v. FedEx Corp.*, 849 F.3d 400, 405 (8th Cir. 2017) ("If an amended complaint's breach-of-contract claim conflicts with the plain language of the contract, the contractual language controls.").[12] The Cookie Banner contained no false statements.

The Complaint does not contain facts that would establish any alleged misrepresentation was material. "[A] fraudulent misrepresentation is material if it is likely to induce a reasonable person to act." *Dier v. Peters*, 815 N.W.2d 1, 8 (Iowa 2012); *Mar-Cone Appliance Parts Co. v. Managan*, 879 F. Supp. 2d 344, 382 (W.D.N.Y. 2012) (similar). It must also "substantially affect the interest of the party alleged to have been defrauded." *Dier*, 815 N.W.2d at 8. Plaintiff alleges that he "would not have continued to use the Website" if he had known that Grinnell would deploy "Tracking Tools" without Plaintiff first selecting the "I Agree" button. (*E.g.*, Compl. ¶ 19.) Elsewise, the Complaint simply contains a number of generic statements that consumers would find the statements in the Cookie Banner to be material. (*E.g.*, Compl. ¶¶ 216, 262.) These conclusory statements do not plead a factual basis from which this Court could infer that any specific representation within the Cookie Banner would induce a *reasonable person* to act. *See Dier*, 815 N.W.2d at 8; *Greenburg v. Chrust*, 282 F. Supp. 2d 112, 119 (S.D.N.Y. 2003). "Most of us understand that what we do on the Internet is not completely private." *Cook*, 148 F.4th at 160.

Plaintiff has also not pleaded a factual basis from which the Court could infer fraudulent intent by Grinnell. The complaint must "set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading." *Asbury Square, L.L.C.*

---

[12]    Plaintiff's misinterpretation of the Cookie Banner does not state a fraud claim. "A misinterpretation of an unambiguous contract clause cannot form the basis of a fraud claim." *Asbury Square, L.L.C. v. Amoco Oil Co.*, 218 F.R.D. 183, 194 (S.D. Iowa 2003); *Brown v. N. Cent. F.S., Inc.*, 173 F.R.D. 658, 669 (N.D. Iowa 1997) ("[P]leading what a plaintiff "understood" is insufficient, because fraud will lie only for what a defendant affirmatively misrepresented."); *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 399 (E.D.N.Y. 2018) (finding on motion to dismiss that contract terms foreclosed fraud claim).

*v. Amoco Oil Co.*, 221 F.R.D. 497, 501 (S.D. Iowa 2004); *see also Wood ex rel. U.S. v. Applied Rsch. Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) (similar). The Complaint contains no facts that would provide the Court sufficient basis to infer fraudulent intent. Further, there are no facts that would suggest Grinnell would presume that Plaintiff would misconstrue its Cookie Banner and Privacy Policy in the manner set forth in the Complaint. (*See* Compl. ¶ 4; Ex. A).

Plaintiff cannot establish justifiable reliance, either. Justifiable reliance "requires plaintiffs to utilize their abilities to observe the obvious." *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 737 (Iowa 2009); *Asbury Square*, 221 F.R.D. at 501; *see also Gervasio v. DeNapoli*, 126 A.D.2d 514, 514 (N.Y. App. Div. 1987) (similar). Plaintiff's misinterpretation of the Cookie Banner would have been easily disabused by a review of Grinnell's Privacy Policy, which is precisely what the Cookie Banner informed Plaintiff he should do if he wished to "opt out" of the use of cookies. (*See* Compl. ¶ 4; *see also* Compl. ¶ 50 (making allegations concerning the content of the Privacy Policy).) Plaintiff was not justified in relying on his own misinterpretation of the Cookie Banner.

Finally, Plaintiff has not pleaded that his alleged reliance on Grinnell's misrepresentations resulted in damages. Plaintiff must allege with particularity that "the representation was a proximate cause of [his] damages." *See Spreitzer*, 779 N.W.2d at 735; *Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) (similar). Plaintiff alleges Grinnell deployed "Tracking Tools" before the Cookie Banner was displayed. (Compl. ¶ 5.) The Cookie Banner's representations therefore could not have caused any of the alleged injuries. Plaintiff fails to state a fraud claim in all respects and has not come close to meeting the Rule 9(b) standard. *See* Fed. R. Civ. P. 9(b).

## C.    Plaintiff does not state an unjust enrichment claim.

To state an unjust enrichment claim, Plaintiff must demonstrate that "(1) one party [was] enriched (2) at the expense of the other, and (3) it would be unjust under the circumstances for the

enriched party to retain the benefit" to state a claim for unjust enrichment. *See MidwestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 886 (Iowa 2020); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. Ct. App. 2011) (similar). Plaintiff's claim for unjust enrichment fails because a contract controls the transactions at issue, and Grinnell's alleged retention of Plaintiff's data was not unjust. *See Bradshaw Renovations, LLC v. Graham*, 20 N.W.3d 479, 487 (Iowa 2025); *Whitby*, 2026 WL 1520742, at *8.[13]

First, Plaintiff cannot state a claim for unjust enrichment because an express contract controls. Unjust enrichment is based on the concept of an implied contract. *Bradshaw Renovations*, 20 N.W.3d at 487; *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. Ct. App. 2012). A written contract will supersede an implied contract involving the same subject matter. *Id.* Where an express contract and adequate remedy at law exists, equity generally will not provide relief. *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 566–67 (8th Cir. 2019); *Corsello*, 967 N.E.2d at 1185 (("[A claim for unjust enrichment] is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.").

Plaintiff asserts Grinnell has been unjustly enriched by the "benefits" of collecting data from its website. (Compl. ¶ 267.) However, the conduct Plaintiff alleges constitutes unjust enrichment is contemplated by the Privacy Policy and the resulting agreement between Plaintiff and Grinnell. *See supra* II.B.2; Ex. A. The basis of Plaintiff's claim is covered by an express agreement. *See, e.g., Legg v. W. Bank*, 873 N.W.2d 763 771-72 (Iowa 2016); *Dean Snyder Constr.*

---

[13]    Plaintiff also lacks standing to sue for unjust enrichment for the same reasons he otherwise lacks standing. *E.g., Butler*, 2026 WL 883904, at *2, *5 (dismissing all of the plaintiff's claims for lack of standing, including unjust enrichment); *Timothee v. Meta Platforms, Inc.*, No. 25-cv-05106-LB, 2026 WL 1130363, at *8 (N.D. Cal. Apr. 27, 2026) (similar).

*Co. v. Travelers Prop. Cas. Co. of Am.*, 173 F. Supp. 3d 837, 855 (S.D. Iowa 2016); *Port Auth. of N.Y. & N.J. v. Brooklyn Union Gas Co.*, 119 N.Y.S.3d 191, 194 (N.Y. App. Div. 2020); *Woss, LLC v. 218 Eckford, LLC*, 959 N.Y.S.2d 218, 221 (N.Y. App. Div. 2013).

Further, Plaintiff cannot plausibly allege Grinnell's retention of any data was unjust. *See Lakeside Feeders, Inc. v. Producers Livestock Mktg. Assoc.*, 666 F.3d 1099, 1112–13 (8th Cir. 2012) (holding the defendant's retention of a benefit was not unjust in the absence of coercion); *Goel v. Ramachandran*, 975 N.Y.S.2d 428, 437–38 (N.Y. App. Div. 2013) (similar). As another district court within this circuit recently explained: "[The Defendant's] use of tracking technology to monitor and improve the portals is akin to 'a shopkeeper who noticed customers eyeing items at the back of the store and therefore moved the items out front[.]' The shopkeeper's acquisition and use of such information is not unjust." *Whitby*, 2026 WL 1520742, at *8 (citations omitted).

Similarly, Plaintiff cannot establish how the retention of data exchanged during—and, in fact, created as the product of—Plaintiff's browsing activity would unjustly enrich Grinnell. Plaintiff paid nothing to "peruse the Website's content." (*See* Compl. ¶ 11.) Plaintiff asserts that Grinnell has retained the benefits in "breach of the representations made to users and without valid consent," but the Cookie Banner and Privacy Policy both disclosed that Grinnell may track and retain web-browsing data. (Compl. ¶¶ 4, 268; Ex. A.) Plaintiff has failed to explain why the collection and use of data is at his expense when Grinnell made clear representations regarding its use of cookies. *See Lakeside Feeders*, 666 F.3d at 1112–13. Thus, Plaintiff's unjust enrichment claim should be dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's Class Action Complaint, ECF No. 1.

32

Dated: August 11, 2026

/s/ Matthew A. McGuire
Frank B. Harty, AT0003356
Matthew A. McGuire, AT0011932
Ami L. Penquite, AT0016149
NYEMASTER GOODE, P.C.
700 Walnut, Suite 1300
Des Moines, IA 50309
Telephone: (515) 283-3100
Fax: (515) 283-8045
Email: fharty@nyemaster.com
        mmcguire@nyemaster.com
        apenquite@nyemaster.com

Frances M. Haas, AT0009838
NYEMASTER GOODE, P.C.
275 1st Avenue SW, Suite 204
Cedar Rapids, Iowa 52405-3965
Telephone: (319) 286-7022
Facsimile: (319) 286-7050
Email: fmhaas@nyemaster.com

**ATTORNEYS FOR DEFENDANT
GRINNELL COLLEGE**