**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| EYAL HANFLING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GRINNELL COLLEGE,<br><br>Defendant. | Case No. 4:26-cv-00213-RGE-HCA<br><br>**PLAINTIFF HANFLING'S PROPOSED RESPONSE IN OPPOSITION TO DEFENDANT GRINNELL COLLEGE'S MOTION TO DISMISS** |

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Defendant's Website and Cookie Banner ..... 2

II. Defendant Deploys Tracking Tools Without User Consent ..... 3

III. The Tracking Tools Intercept and Transmit Users' Communications to Third Parties ..... 3

IV. Plaintiff's Experience ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 6

I. Plaintiff Has Adequately Alleged Standing ..... 6

II. Plaintiff Has Stated A Claim Under The Federal Wiretap Act. ..... 10

A. Plaintiff Adequately Alleged Defendant Intercepted Contents of an Electronic Communication ..... 11

B. Defendant Is Not Protected by the Party Exception to the Wiretap Act ..... 13

III. Plaintiff Has Stated Claims Under New York Consumer Protection Laws ..... 17

A. Plaintiff Has Sufficiently Alleged That He Suffered An Injury ..... 17

B. Plaintiff Has Sufficiently Alleged That the Cookie Banner Was Materially Misleading ..... 20

IV. Plaintiff Has Stated Common Law Claims ..... 21

A. Plaintiff Has Stated An Invasion Of Privacy Claim ..... 21

B. Plaintiff Has Stated A Common Law Fraud Claim ..... 22

C. Plaintiff Has Stated An Unjust Enrichment Claim ..... 24

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Cases**

*Allison v. PHH Mortg.*,
No. 25-cv-05323-RFL, 2026 WL 1353827 (N.D. Cal. May 14, 2026) .......... 15, 16

*Apel v. T-Mobile USA, Inc.*,
No. 3:24-cv-00098-RGE-WPK, 2025 WL 2222737 (S.D. Iowa July 30, 2025) .......... 12

*Asercion v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
No. 26-cv-02442-RFL, 2026 WL 2453175 (N.D. Cal. Aug. 21, 2026) .......... 15, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Butler v. U.S. Bancorp*,
No. 24-CV-03700 (JMB/SGE), 2026 WL 883904 (D. Minn. Mar. 31, 2026) .......... 10

*Cohen v. Casper Sleep Inc.*,
Nos. 17cv9325; 17cv9389; 17cv9391, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) .......... 18

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) .......... 23

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .......... 18

*Correia v. Lulu & Georgia, Inc.*,
No. 3:26-cv-01186-GPC-JLB, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) .......... 8, 9

*Croteau, et al. v. TN Mkt'g, LLC*,
No. 25-CV-0940 (PJS/ECW), 2026 WL 810813 (D. Minn. Mar. 24, 2026) .......... 6, 7, 8

*Dellasala v. Samba TV, Inc.*,
No. 3:25-cv-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 9

*Delong v. PHE, Inc.*,
No. 24-5212, 2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) .......... 10

*Dier v. Peters*,
815 N.W.2d 1 (Iowa 2012) .......... 23

*Doe v. GoodRx Holdings, Inc.*,
No. 23-cv-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 17

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022) .......... 20

*Foster v. Walmart, Inc.*,
15 F.4th 860 (8th Cir. 2021) .......... 14

*Garcia v. Anschutz Ent. Grp., Inc.*,
832 F. Supp. 3d 993 (C.D. Cal. 2026) .......... 7

*Garcia v. Blackhawk Network*,
No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 22

*Greco v. Syracuse ASC, LLC*,
193 N.Y.S.3d 511 (4th Dept. 2023) .......... 19

*Harlan Feeders, Inc. v. Grand Lab.,*
881 F. Supp. 1400 (N.D. Iowa 1995) .......... 21

*Harris v. iHeartMedia, Inc.*,
No. 25-cv-06038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026) .......... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7, 10

*In re Google Inc.*,
806 F.3d 125 (3d Cir. 2015) .......... 12, 14

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 11, 15, 16

*In re Marriage of Tigges*,
758 N.W.2d 824 (Iowa 2008) .......... 22

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) .......... 14

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 12

*Interbake Foods, L.L.C. v. Tomasiello*,
461 F. Supp. 2d 943 (N.D. Iowa 2006) .......... 21

*Joiner v. NHL Enters., Inc.*,
No. 23-CV-2083 (LAK) (BCM), 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) .......... 17

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024) .......... 6, 8

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 19

*Kelly v. Beliv LLC*,
640 F. Supp. 3d 286 (S.D.N.Y. 2022)........................................................................ 20

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)................................................................................................ 21

*Koch v. Acker, Merrall & Condit Co.*,
967 N.E.2d 675 (N.Y. App. 2012).......................................................................... 17

*Koeppel v. Speirs*,
808 N.W.2d 177 (Iowa 2011) ................................................................................. 21

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................................. 6

*Manning v. Pioneer Sav. Bank*,
55 N.Y.S.3d 587 (2016)........................................................................................... 19

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018)..................................................................................... 21

*Mekhail v. N. Mem'l Health Care,*
726 F. Supp. 3d 916 (D. Minn. 2024)...................................................................... 13

*Montera v. Premier Nutrition Corp.*,
111 F.4th 1018 (9th Cir. 2024) ................................................................................ 17

*Mount v. PulsePoint, Inc.*,
684 Fed. Appx 32 (2d Cir. 2017)............................................................................. 18

*Mount v. PulsePoint, Inc.*,
No. 13 Civ. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug, 17, 2016) ............................... 19

*Norfolk v. Rogers Mfg. Corp.*,
122 F.4th 312 (8th Cir. 2024) ............................................................................ 6, 15

*Okash v. Essentia Health*,
No. 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ................................... 17

*Okoboji Camp Owners Co-op. v. Carlson*¸
578 N.W.2d 652 (Iowa 1998) ................................................................................. 24

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)..................................................................................... 18

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ................................................................................... 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 9

*Q.J. v. Powerschool Holdings, LLC*,
No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) .......... 13

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 16

*Smith v. Chase Manhattan Bank, USA, N.A.*,
741 N.Y.S.2d 100 (App. 2002) .......... 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6

*Spreitzer v. Hawkeye State Bank*,
779 N.W.2d 726 (Iowa 2009) .......... 23

*Strong v. LifeStance Health Grp. Inc.*,
No. CV-23-00682-PHX-KML, 2025 WL 317552 (D. Ariz. Jan. 28, 2025) .......... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*U.S. DOJ v. Reporters Comm. for Freedom of Press*,
489 U.S. 749 (1989) .......... 7

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
441 F.3d 552 (8th Cir. 2006) .......... 22

*Vriezen v. Infinite Health Collaborative, P.A.*,
No. 24-CV-3743 (NEB/DJF), 2025 WL 2992204 (D. Minn. Sept. 30, 2025) .......... 11

*Ward v. Pepperidge Farm, Inc.*,
773 F. Supp. 3d 10, 18 (S.D.N.Y. 2025) .......... 20

*Whitby v. Cerner Corp.*,
No. 25-04087-CV-C-BP, 2026 WL 1520742 (W.D. Mo. Apr. 13, 2026) .......... 10

*Wiley v. Universal Music Grp., Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) .......... 9

*Williams v. Dukehealth*,
No. 1:22-CV-727, 2024 WL 898051 (M.D.N.C. Mar. 1, 2024) .......... 8

*Wright v. Brooke Grp. Ltd.*,
652 N.W.2d 159 (Iowa 2002) .......... 23

**Statutes**

18 U.S.C. § 2510(8) ........................................ 13

18 U.S.C. § 2511 ........................................ 10

18 U.S.C. § 2511(2)(d) ........................................ 14, 15

GBL § 350 ........................................ 17, 19

N.Y. Gen. Bus. Law § 350-a ........................................ 21

New York General Business Law ("GBL") § 349 ........................................ 17, 18, 19

**Rules**

Fed. R. Civ. P. 8(d)(2)-(3) ........................................ 24

Fed. R. Civ. P. 9(b) ........................................ 23

Plaintiff Eyal Hanfling ("Plaintiff") respectfully submits this Response in Opposition to Defendant Grinnell College's ("Defendant") Motion to Dismiss ("Motion") (ECF No. 13).

## INTRODUCTION

On its website, Defendant told users: "To accept the use of cookies and continue on to the site, click 'I Agree.'" Plaintiff did not click "I Agree," and so did not agree to the use of cookies. Defendant nonetheless embedded tracking pixels from TikTok, Meta, Google, Reddit, and Snap that intercepted the pages Plaintiff viewed, along with persistent identifiers, and transmitted them to those companies to match to his identity, combine with his internet activity, and monetize.

Defendant's motion to dismiss rests on recasting this case as something it is not. Defendant relies in large part on decisions involving "session replay" software that recorded a shopper's clicks and scrolls on a single retail website and argues that Plaintiff's browsing was no more private than a customer's movements in a store. But the plaintiffs in those cases were never told that their consent would govern. Plaintiff was. And the harm alleged here is not just that Defendant collected information about Plaintiff's browsing; it is that Defendant handed his browsing information, tagged with identifiers, to five advertising platforms to build cross-site profiles—all after representing that it would not do so without his agreement. That injury bears a close relationship to the intrusion tort, and Plaintiff has standing to pursue it.

Plaintiff has stated claims under the federal Wiretap Act, New York's General Business Law, and, under Iowa common law, for intrusion on seclusion, fraud, and unjust enrichment. Accordingly, Defendant's motion should be denied.

## **BACKGROUND**

### I. **Defendant's Website and Cookie Banner**

Grinnell College is a private liberal arts college located in Grinnell, Iowa, that operates a website at https://www.grinnell.edu/ (the "Website"). Compl. ¶¶ 2-3. Through the Website, users can explore Grinnell's academic programs, admissions process, campus life, and faculty; apply for admission and financial aid; create and manage user accounts through college-related portals; and access educational, administrative, and support services. *Id.* ¶ 3. When a user navigates to a page on the Website, the user's browser sends an HTTP request to Grinnell's server identifying the specific resource requested (the "Request URL"), and the server returns the requested content, which the browser reassembles into the displayed webpage. *Id.* ¶¶ 24-26.

The Website displays a pop-up message (the "Cookie Banner") that purports to give users meaningful control over what data the Website shares with third parties, and that represents to users that the Website will not use cookies to track them until they click the "I Agree" button. *Id.* ¶ 4. When Plaintiff visited the Website, it displayed the Cookie Banner, pictured below:




*Id.* ¶ 4 & *Fig*.1. The Cookie Banner represents that "[w]e use cookies to enable essential services and functionality on our site, enhance your user experience, provide better service through personalized content, collect data on how visitors interact with our site, and enable advertising services." *Id.* ¶ 47. It further instructs users: "To accept the use of cookies and continue on to the site, click 'I Agree.' For more information about our use of cookies and how to opt out, please refer to our website privacy policy." *Id.* The Cookie Banner presents users with two buttons,

labeled "I Agree" and "Privacy Policy." *Id.* ¶ 48. Selecting "I Agree" causes the Cookie Banner to disappear from the screen; selecting "Privacy Policy" directs the user to a separate webpage containing Defendant's Privacy Policy. *Id.* Users are not required to select either button and may continue browsing the Website without doing so. *Id.* ¶ 51.

## II. Defendant Deploys Tracking Tools Without User Consent

Contrary to those representations, the Website begins placing and transmitting cookies and other third-party tracking technologies (the "Tracking Tools") the moment a user visits the Website—before the user can interact with the Cookie Banner at all. *Id.* ¶¶ 5-6. After the Cookie Banner is displayed, Defendant continues to deploy the Tracking Tools and transmit user information to third parties regardless of whether the user ever clicks "I Agree." *Id.* ¶ 51. Defendant thus deployed Tracking Tools by, at minimum, Facebook, Google, TikTok, Reddit, Snapchat, and other third parties, despite the absence of any meaningful consent. *Id.* ¶ 179.

## III. The Tracking Tools Intercept and Transmit Users' Communications to Third Parties

The Tracking Tools collect detailed interaction and behavioral data, including users' selections of links, buttons, forms, and other on-page elements, as well as information entered into search fields. *Id.* ¶ 6. This data may include webpages viewed, academic or admissions-related content accessed, forms submitted, and users' interactions with Website content; inferred interests, preferences, age, location, or other characteristics; and personal, device, and technical identifiers such as device type, operating system, and browser type. *Id.* The data also includes persistent identifiers that enable recognition of users across sessions and websites, users' email addresses, and approximate geolocation information. *Id.* Collectively, the Complaint refers to this information as "Sensitive Information." *Id.*

The Website deploys Tracking Tools that transmit users' Sensitive Information to advertising, social media, and analytics companies that design and operate the Tools, including

TikTok, Meta, Google, Reddit and Snap (the "Tracking Entities"). *Id.* ¶¶ 7, 57-159. The Tracking Tools intercepted the contents of users' communications contemporaneously with users' interactions with the Website, transmitting data to the Tracking Entities as soon as the Tools loaded onto users' browsers and again when users submitted information through the Website. *Id.* ¶ 170. This interception, duplication, and transmission occurred inside users' browsers before the communications fully reached users' devices or were transmitted from users' devices. *Id.* ¶ 171. The communications intercepted by the Tracking Entities included detailed Request URLs containing the names and file locations of webpages users viewed, together with identifying information in the form of cookies and information about users' activity on the Website. *Id.* ¶ 169.

Among the Tracking Tools is the TikTok Pixel, a snippet of code that begins collecting information the moment a user lands on the Website. *Id.* ¶ 58. Defendant included its own TikTok Pixel ID in transmissions sent to and from users' devices, which allows TikTok to link the intercepted data back to Defendant's TikTok business profile. *Id.* ¶¶ 58-59. The TikTok Pixel also captures the _ttp cookie, which TikTok uses to identify TikTok users. *Id.* ¶ 67. The Meta Pixel likewise transmits the c_user cookie, which contains the user's Facebook ID and, standing alone, resolves to that user's Facebook profile. *Id.* ¶¶ 104-09. And Reddit requires website operators to transmit the visitor's IP address, which Reddit uses to match an otherwise anonymous visitor to a Reddit account. *Id*. ¶¶ 131-32. The Website similarly employs Google Tracking Tools, including Google Analytics (*id.* ¶¶ 81-95); and the Snap Pixel (*id.* ¶¶ 141-165), both of which are configured to collect and transmit users' Website activity.

## IV. <u>Plaintiff's Experience</u>

Plaintiff Eyal Hanfling is a citizen and resident of the State of New York. *Id.* ¶ 19. Plaintiff accessed and used the Website while physically located in New York, most recently visiting the

political science page of the Website in or about July 2024. *Id.* In connection with that visit, Plaintiff was presented with the Cookie Banner, which he did not interact with in any manner. *Id.* ¶¶ 12, 19. Relying on Defendant's representation that Tracking Tools would be used only upon a user clicking "I Agree," Plaintiff did not provide affirmative consent or click "I Agree," and instead continued to use the Website. *Id.* ¶ 12. Plaintiff reasonably believed that, because he did not select "I Agree," his browsing activity would not be tracked beyond what was strictly necessary for the Website's basic functionality. *Id.* ¶ 19.

Defendant nonetheless deployed Tracking Tools, including cookies, that automatically intercepted, recorded, and transmitted Plaintiff's Sensitive Information—including the webpages he viewed, together with identifiers and related metadata—to the Tracking Entities. *Id.* ¶¶ 12, 19. Plaintiff was thereby subjected to the unauthorized disclosure of his Sensitive Information and deprived of the benefit of his privacy choices. *Id.* ¶ 13. The Sensitive Information collected from Plaintiff has independent, quantifiable value in the marketplace, and this value was directly diminished by Defendant's unauthorized disclosure of that data. *Id.* ¶ 46.

Plaintiff alleges Defendant's conduct violated the federal Wiretap Act, 18 U.S.C. § 2510 et seq.; New York's General Business Law §§ 349 and 350; and the common law governing invasion of privacy, intrusion upon seclusion, fraud and deceit, and unjust enrichment. *Id.* ¶ 14. Plaintiff brings this action individually and on behalf of a putative class of similarly situated users (*id.* ¶¶ 15, 188), including a New York Subclass of Class members who visited the Website while located in New York (*id.* ¶ 189).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quotations omitted). "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant' is liable." *Norfolk v. Rogers Mfg. Corp.*, 122 F.4th 312, 315 (8th Cir. 2024) (citation omitted). "A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint strikes a savvy judge that actual proof of the facts alleged is improbable and recovery very remote and unlikely." *Id.* (citation omitted). The court should "accept[] the allegations in the complaint as true and draw[] all reasonable inferences in the nonmoving party's favor." *Id.* (citation omitted).

## ARGUMENT

### I. Plaintiff Has Adequately Alleged Standing

Defendant's standing challenge lacks merit: the Court accepts the Complaint's allegations as true, and "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To establish Article III standing, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To allege an injury-in-fact, the injury must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Actual harm can be shown through intangible harms. *See Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 538 (8th Cir. 2024). "'Chief among' intangible injuries that qualify as concrete 'are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts,' such as 'reputational harms, disclosure of private information, and intrusion upon seclusion.'" *Croteau, et al. v. TN Mkt'g, LLC*, No. 25-CV-0940 (PJS/ECW), 2026 WL 810813, at *2 (D. Minn. Mar. 24, 2026) (alteration adopted) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Plaintiff has standing here. He has alleged that Defendant allowed third parties to intercept his communications with the Website, to obtain the contents of those communications, and to combine that information with other information about him to create a comprehensive profile of his behavior on the internet. *See supra* at 3-6. He has also alleged that Defendant enabled this tracking for its own commercial benefit, even *before* allowing him the opportunity to accept or decline and *after* representing to him that he would be tracked only if he selected "I Agree" on its Cookie Banner. *See supra* at 2-3. Because the right to privacy "encompass[es] [an] individual's control of information concerning his or her person," *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019) (quoting *U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989)), the unauthorized tracking and disclosure of Plaintiffs' Sensitive Information satisfy Article III's concreteness requirement. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (standing satisfied where "Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information"); *see also Garcia v. Anschutz Ent. Grp., Inc.*, 832 F. Supp. 3d 993, 997 (C.D. Cal. 2026) (similar).

In a similar pixel-tracking case, another court in this Circuit observed "that the injuries alleged by plaintiffs bear a close relationship to injuries that have traditionally provided a basis for tort claims in American courts. Specifically, plaintiffs' asserted harms are very similar to the harms that give rise to the torts of intrusion upon seclusion and public disclosure of private information." *Croteau*, 2026 WL 810813, at *4 (citations omitted). In brief, the *Croteau* court found standing because "plaintiffs allege[d] that their private information…was given by [Defendant] to the largest social media company in the world (Meta), so that Meta could use[] that information to feed targeted advertisements to plaintiffs, and so that Meta could sell that information to an

unlimited number of other advertisers for use in targeting plaintiffs." *Id.* at *5. "These intangible injuries are quite similar to the harms that form the basis of the torts of intrusion upon seclusion and public disclosure of private information." *Id.*

Plaintiff here has raised materially indistinguishable allegations and thus has sufficiently alleged standing. *See also, e.g.*, *Correia v. Lulu & Georgia, Inc.*, No. 3:26-cv-01186-GPC-JLB, 2026 WL 2343093, at *4 (S.D. Cal. Aug. 12, 2026) (plaintiff alleged standing where cookie banner created "a reasonable expectation of privacy" with regard to information entered on the website and complaint "detail[ed] the tracking cookies installed, their tracking capabilities, and how they could create harm"); *Williams v. Dukehealth*, No. 1:22-CV-727, 2024 WL 898051, at *5 (M.D.N.C. Mar. 1, 2024) ("[Plaintiff] alleges that her protected health information was specifically targeted by Facebook, was disclosed by Defendant to Facebook, and was then misused by Facebook in targeted advertising. Under these circumstances, [plaintiff] sufficiently alleges that an injury in fact occurred as relates to the invasion of her privacy and disclosure of her private information.").

In arguing to the contrary, Defendant relies on a series of cases considering use of session replay technology to track website usage. *See, e.g.*, Def. Mot. to Dismiss (ECF No. 16) ("Mot.") at 6-10. Crucially, however, session replay technology operates differently from the tracking software central to Plaintiff's allegations here. In *Jones*, for instance, the plaintiff alleged the use of session replay technology but did not allege "that it recorded any of her contact information or even her name." 124 F.4th at 539. As discussed (*supra* at 3-6), on the other hand, the technology Plaintiff attacks here intercepts information contained in transmissions between Plaintiff and the Website. "[T]he TikTok Pixel secretly installed on Defendant's Website," for example, "'immediately links to data harvesting platforms that pick off usernames and passwords, credit

card and banking information, and details about users' personal health.' It also collects 'names, passwords, and authentication codes' and 'transfer[s] the data to locations around the globe' and does so 'before users have a chance to accept cookies or otherwise grant consent.'" Compl. ¶ 72. Moreover, its "Advanced Matching" feature allows Defendant to "match customer information such as email and phone number along with actions people take on [the Website]," and, "[o]nce Advanced Matching is active, the TikTok Pixel 'will automatically find customer information and match it with people on TikTok.'" *Id.* ¶¶ 62-64. The Meta Pixel likewise transmits the c_user cookie, which contains the user's Facebook ID and, standing alone, resolves to that user's Facebook profile. *Id.* ¶¶ 104-09. And Reddit requires website operators to transmit the visitor's IP address, which Reddit uses to match an otherwise anonymous visitor to a Reddit account. *Id.* ¶¶ 131-32. Accordingly, Plaintiff's allegations go beyond those in the session replay technology cases and are sufficient to create standing.

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) is not to the contrary. As an initial matter, the defendant in *Popa* did not misrepresent its data-sharing practices through a cookie banner. *See Correia*, 2026 WL 2343093, at *4 (holding that the defendant's deceptive cookie settings distinguished the case from *Popa* and created "a reasonable expectation of privacy with respect to that information") (quoting *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1132 (N.D. Cal. 2025)). Further, the degree and extent of tracking here exceeds that in *Popa*: Plaintiff's Sensitive Information was used to create comprehensive user profiles built from data collected across Plaintiff's browsing and interactions on other websites as well as on Defendant's Website. Defendant and the Tracking Entities then used these comprehensive profiles for monetary gain. Compl. ¶¶ 6, 45, 65, 101, 112-13, 155, 181-82, 237, 249, 267; *see also Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 WL 1138358, at *3 (N.D. Cal. Apr. 21, 2026) ("*Popa* is

further distinguishable because it did not involve any dissemination of the 'session-replay' beyond the defendants' own use."); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 247875, at *1 (N.D. Cal. Jan. 29, 2026) (finding Article III standing where, "[u]sing IP addresses, device metadata, and unique identifiers, the third parties allegedly track[ed] users 'across the internet' and 'buil[t] comprehensive user profiles that include an assortment of information, interests, and inferences'"). The same logic distinguishes the few pixel-tracking cases Defendant does cite. *See Whitby v. Cerner Corp.*, No. 25-04087-CV-C-BP, 2026 WL 1520742, at *2 (W.D. Mo. Apr. 13, 2026) (granting motion to dismiss where plaintiffs "d[id] not allege" that "the information allegedly conveyed [was] pieced together, analyzed, and combined with other data" so that "inferences about a particular person c[ould] be discerned"); *Butler v. U.S. Bancorp*, No. 24-CV-03700 (JMB/SGE), 2026 WL 883904 (D. Minn. Mar. 31, 2026) (granting motion to dismiss and distinguishing *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d, because plaintiffs in *Butler* did not allege that defendant "gained a cradle-to-grave-profile without users' consent"); *Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787, at *5-6 (E.D. Pa. Aug. 25, 2025) (granting motion to dismiss where there was no cookie banner that created reasonable expectation of privacy).

## II. <u>Plaintiff Has Stated A Claim Under The Federal Wiretap Act.</u>

The Wiretap Act requires a showing that Defendant (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. *See* 18 U.S.C. § 2511. Defendant's violation of § 2511 is twofold: (i) Defendant procured the Tracking Entities to intercept user communications through the Tracking Tools it embedded on the Website, and (ii) Defendant used the intercepted communications for marketing and analytics. *See* Compl. ¶¶ 9, 40, 54, 173-75, 239,

241-42 (procurement); ¶¶ 69, 94, 102, 154, 181, 242 (use). Each of Defendant's arguments to the contrary is unavailing.

**A. Plaintiff Adequately Alleged Defendant Intercepted Contents of an Electronic Communication**

Plaintiff alleges that the Tracking Tools intercept the contents of his communications with the Website because they intercepted detailed URLs including information specific to Plaintiff. *See* Compl. ¶¶ 19, 27-28, 54-56, 168-70, 173, 234. On this issue, a recent case from the District of Minnesota is illustrative:

> Plaintiffs have plausibly pled that an interception occurred. They allege that whenever they interacted with [defendant's] Websites, [defendant], through the Pixel imbedded in and run on the Websites, 'contemporaneously and intentionally' redirected and disclosed the contents of Plaintiffs' electronic communications to third parties…. This is sufficient to allege interception….

*In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023) (citations omitted). The same logic applies here: Plaintiff alleges that whenever he interacted with the Website, the Tracking Tools that Defendant embedded in and ran on the Website contemporaneously intercepted, duplicated, and transmitted the contents of his communications to the Tracking Entities. *See* Compl. ¶¶ 54, 168-73, 237-38.

Indeed, courts generally agree that "a URL that discloses a 'search term or similar communication made by the user' can be considered a communication under the statute." *Vriezen v. Infinite Health Collaborative, P.A.*, No. 24-CV-3743 (NEB/DJF), 2025 WL 2992204, at *7 (D. Minn. Sept. 30, 2025) (citations omitted). That is precisely what Plaintiff has alleged here:

> The Tracking Tools collect[ed] detailed interaction and behavioral data…. This data may include webpages viewed, academic or admissions-related content, forms submitted, and users' interactions with Website content; inferred interests, preferences, age, location, or other characteristics based on user behavior and content engagement; and personal, device, and technical identifiers such as device type, operating system, and browser type. The data also includes persistent identifiers that enable recognition of users across session and websites, users' email

> addresses, and approximate geolocation information derived from IP addresses or similar signals.

Compl. ¶¶ 6, 169 ("[T]he network requests intercepted by the Tracking Entities included detailed Requested URLs containing the names and file locations of webpages, the products users browsed on the Website, identifying in the form of cookies, and user activity information indicating users' commercial activity and purchases."). Accordingly, Plaintiff has alleged that the Tracking Entities intercepted the contents of his electronic communications, and that Defendant procured those interceptions.

Defendant's reliance on *Apel v. T-Mobile USA, Inc.*, No. 3:24-cv-00098-RGE-WPK, 2025 WL 2222737 (S.D. Iowa July 30, 2025), is misplaced. *See* Mot. at 14-15. *Apel* concerned the mechanical data required to connect a telephone call—the caller's number, carrier, PIN, and the date, time, and duration of the call. *See Apel*, WL 2222737, at *3. Such data reveals only that a call was placed, not what was said. Courts distinguish on exactly this basis between a URL that merely identifies a domain, which functions like a phone number, and a URL that identifies the particular content requested, which functions like the conversation. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (distinguishing basic identification information from a URL that reveals specific information about the content the user requested); *In re Google Inc.*, 806 F.3d 125, 137-39 (3d Cir. 2015) ("*In re Google Inc.*") (URL may be content where it conveys the user's substantive query). Here, Plaintiff alleges the Tracking Tools intercepted Request URLs specifying "the content Plaintiff accessed on the Website," including "the webpages he viewed, such as information about political science." Compl. ¶¶ 19, 173. Those allegations describe interception of "contents" within the meaning of the Wiretap Act.

Finally, Defendant argues that Plaintiff cannot state a claim because he "did not purchase any products, fill out any forms, or enter any text." Mot. at 15. But the Wiretap Act does not require

that a communication be typed. To the contrary, the statute protects "*any* information concerning the substance, purport, or meaning" of a communication, 18 U.S.C. § 2510(8) (emphasis added). Plaintiff alleges, for example, that when he navigated to pages concerning political science, the Tracking Tools contemporaneously intercepted the Request URLs identifying those pages, "together with identifiers and related metadata," and transmitted them to the Tracking Entities. Compl. ¶¶ 19, 170, 173, 237. A user who selects and reads an article on a website communicates his interest in that subject just as surely as one who types the subject into a search box, and Defendant configured the Tracking Tools to capture that selection with specificity. *Id.* ¶¶ 55-56, 66. Accordingly, Plaintiff has alleged an interception of the contents of his communications.

**B. Defendant Is Not Protected by the Party Exception to the Wiretap Act**

Defendant invokes the Wiretap Act's "party defense" to argue that the Wiretap Act does not apply. That argument fails for three reasons.

*First*, the party defense protects only direct interceptors, not procurers. *See Mekhail v. N. Mem'l Health Care,* 726 F. Supp. 3d 916, 925-26 (D. Minn. 2024) ("[A]n interceptor and the procurer/user of an interception are conceptually and legally distinct" and "the statute's plain language appears to support the interpretation that the party exception was drafted with active interceptors foremost in mind."); *see also Q.J. v. Powerschool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *12 n.3 (N.D. Ill. Aug. 20, 2025) (noting that it is an open question as to whether § 2511(2)(d)'s statutory language protects procurers). Here, Plaintiff distinguishes Defendant's role as a procurer from that of a direct interceptor. *See* Compl. ¶¶ 7, 172-75, 236-37, 239, 241-42. Because Defendant procured the interceptions rather than performing them, its purported consent is irrelevant.[1]

[1] Defendant's reliance on *In re Google Inc.* for the proposition that a party's consent is effective even if it "procured [its] entrance to a conversation through a fraud in the inducement" (Mot. at 17, quoting 806 F.3d

*Second*, Defendant's contention that Plaintiff consented to the interception by "browsing Grinnell's website upon inquiry notice of Grinnell's Privacy Policy" (Mot. at 17–20) fails for several reasons. To begin, Defendant imports the wrong standard. "Inquiry notice" under *Foster v. Walmart, Inc.*, 15 F.4th 860 (8th Cir. 2021), is a doctrine of contract formation. It does not answer whether the user gave "prior consent" to a wiretap; to the contrary, consent under the Wiretap Act "must be actual consent rather than constructive consent," *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 19-20 (1st Cir. 2003), and whether a party consented is a question of fact that "should not be casually inferred." *Id.* at 20. Regardless, Defendant misreads its own Cookie Banner. The Banner told users: "To accept the use of cookies and continue on to the site, click 'I Agree.'" Compl. ¶ 4. A reasonable user reading that sentence would understand that clicking "I Agree" is how to accept the use of cookies, and that declining to click "I Agree" means declining to accept their use. *See id.* ¶¶ 4, 8, 52, 178. Defendant's contrary reading (that the Cookie Banner merely announced the use of cookies and Plaintiff consented by continuing to browse the website) would render the "I Agree" button meaningless.

In any event, the Privacy Policy cannot save Defendant's argument. The Policy describes "generic information" collected "through the use of 'cookies'" to generate "aggregated and anonymous statistics," and states that "[c]ookies are not set by our display of social media buttons." Mot. Ex. A. It does not disclose that Defendant embedded pixels from TikTok, Meta, Reddit, Google, and Snap that transmit page-level browsing data together with persistent identifiers to

---

at 143) fares no better. *In re Google Inc.* addressed whether Google, as the direct recipient of requests sent to its own servers, was a "party" to those communications. It did not involve a website operator that represented to its own visitors that tracking would not occur absent their consent and then enabled third parties to intercept their communications anyway. *See* Compl. ¶¶ 4, 8, 12, 180. The Wiretap Act does not permit a defendant to manufacture "consent" by misrepresenting the terms on which a communication is made, and Congress expressly withdrew the exception where the interception is for a tortious purpose, including fraud. 18 U.S.C. § 2511(2)(d); *see infra* at 16-17.

those companies for advertising and profile-building. *See* Compl. ¶¶ 5-7, 50, 180. And the Policy's own opt-out language ("[u]nless you take steps to browse the internet anonymously, or opt out") cannot be squared with the Cookie Banner's opt-in framing. At minimum, the two documents are ambiguous as to whether tracking occurs without affirmative consent, and that ambiguity should be construed in Plaintiff's favor at this stage in the litigation. *See Norfolk*, 122 F.4th at 315 (on a motion to dismiss, the court should "accept[] the allegations in the complaint as true and draw[] all reasonable inferences in the nonmoving party's favor"). Moreover, Plaintiff alleges that the Tracking Tools began intercepting his communications "the moment [he] arrive[d] on the Website," before the Cookie Banner was displayed and before he had any opportunity to accept or decline. Compl. ¶¶ 6, 51, 53, 179-80. Consent that post-dates the interception is not "prior consent." 18 U.S.C. § 2511(2)(d).

*Third*, even if the Court were to find the "party defense" applicable, the statute's crime-tort exception permits Plaintiff to pursue his Wiretap Act claim under § 2511(2)(d). *See In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 717 ("Th[e] 'party exception' does not apply…if the 'communication is intercepted for the purpose of committing any criminal or tortious act'….") (quoting 18 U.S.C. § 2511(2)(d)). Plaintiff has pled that Defendant's conduct violated New York state law and common law; accordingly, the crime-tort exception applies. *See, e.g.*, *Asercion v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 26-cv-02442-RFL, 2026 WL 2453175, at *3 (N.D. Cal. Aug. 21, 2026) ("[T]he crime-tort exception applies because [p]laintiff sufficiently alleges that [defendant] intended to collect information and distribute it to third parties for targeted advertising, which is an independent tortious purpose beyond the act of interception itself, and as discussed above, it allegedly violated [a California wiretap law] in doing so."); *Allison v. PHH Mortg.*, No. 25-cv-05323-RFL, 2026 WL 1353827, at *11 (N.D. Cal. May 14, 2026) (crime-tort

exception applies where defendant installed trackers on its website to track customers' sensitive information to reduce the cost of marketing); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (crime-tort exception applies where plaintiffs plead an invasion of privacy claim).

Defendant contends the crime-tort exception requires a tortious purpose that is "independent of the intentional act of recording" and the "primary motivation" for the interception. Mot. at 15-16. Plaintiff's allegations satisfy that standard. The tortious purpose here is separate from the act of interception. Indeed, it lies in what Defendant and the Tracking Entities *did* with the intercepted communications: combined them with data collected about Plaintiff from across the internet, constructed profiles reflecting his browsing habits and interests, and used those profiles to target advertising and generate revenue. Compl. ¶¶ 45, 181–82, 237, 242, 249, 267. That conduct is distinct from, and subsequent to, the interception. *See Asercion*, 2026 WL 2453175, at *3 (intent "to collect information and distribute it to third parties for targeted advertising" is "an independent tortious purpose beyond the act of interception itself"); *Allison*, 2026 WL 1353827, at *11 ("The complaint alleges that [defendant] installed trackers on its website to trade customers' sensitive financial information to reduce the cost of marketing services…. That is sufficient to allege a purpose to invade privacy for [defendant's] profit, which triggers the crime-tort exception."); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 719 (applying crime-tort exception in pixel tracking case where plaintiffs "allege[d] the primary motivation in [defendant's] interception and disclosure was to commit wrongful and tortious acts").

Plaintiff has also alleged that this purpose was the reason Defendant deployed the Tracking Tools in the first place. Defendant did not install pixels from TikTok, Meta, Google, Reddit, and Snap by accident; it did so to "track conversions, optimize the delivery of its ad campaigns, create and target its own custom audiences," Compl. ¶ 69; to "monetize the collected data through

targeted advertising," *id.* ¶ 94; and to "increase the effectiveness of advertising, marketing, and sales and to generate revenue," *id.* ¶ 267. Moreover, Plaintiff separately alleges that Defendant's Cookie Banner misrepresentation was intended to induce users to continue browsing while their communications were intercepted, Compl. ¶¶ 8-9, 12, 19, 52, a fraudulent purpose that is independent of the recording by any measure.[2]

## III. <u>Plaintiff Has Stated Claims Under New York Consumer Protection Laws</u>

Plaintiff brings claims under two sections of the New York General Business Law ("GBL"). GBL § 349 "prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce.'" *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1028 (9th Cir. 2024) (quoting GBL § 349). GBL § 350 "prohibits '[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service.'" *Id.* (quoting GBL § 350). "To succeed on a claim under § 349 or § 350, the plaintiff must show that the defendant 'engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Id.* (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675-76 (N.Y. App. 2012). Defendant does not dispute that Plaintiff has alleged consumer-oriented conduct.

### A. Plaintiff Has Sufficiently Alleged That He Suffered An Injury

"For purposes of the GBL, 'a plaintiff must allege actual injury, although that need not take the form of pecuniary harm.'" *Doe v. GoodRx Holdings*, *Inc.*, No. 23-cv-00501-AMO, 2025 WL 2052302, at *13 (N.D. Cal. July 22, 2025) (alteration adopted and citation omitted). Allegations

---

[2] The cases Defendant cites do not hold otherwise. *Joiner v. NHL Enters., Inc.*, No. 23-CV-2083 (LAK) (BCM), 2025 WL 2846431, at *8 (S.D.N.Y. Aug. 29, 2025), and *Okash v. Essentia Health*, No. 23-482 (JRT/LIB), 2024 WL 1285779, at *5 (D. Minn. Mar. 26, 2024), rejected the crime-tort exception where the plaintiffs alleged nothing beyond the interception and a resulting privacy injury. Here, by contrast, Plaintiff alleges that Defendant fraudulently induced reliance and sought the data anticipating its future commercial use—indeed, that is the primary reason it used the Tracking Tools.

of loss of control over and diminution of value of personal data are sufficient to support GBL § 349 claims at the pleading stage. *See id.* ("privacy violations" alleged based on pixel tracking "suffice as . . . an injury" for a GBL claim); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383-84 (S.D.N.Y. 2024) ("[A] privacy injury can be the basis for a § 349 claim 'where confidential, individually identifiable information…is collected without the individual's knowledge or consent.") (quoting *Mount v. PulsePoint, Inc.*, 684 Fed. Appx 32, 35 (2d Cir. 2017)).

Plaintiff has alleged three distinct injuries here. *First*, he alleges that his Sensitive Information "has independent, quantifiable value in the marketplace, and that value was directly diminished by Defendant's unauthorized disclosure of such data." Compl. ¶¶ 46, 206. *Second*, he alleges that he was subjected to interception and disclosure of his communications to TikTok, Meta, Google, Reddit, and Snap that he would have avoided had Defendant accurately disclosed that tracking would occur regardless of whether he clicked "I Agree." *Id.* ¶¶ 12, 19, 203, 206, 216, 218. *Third*, he alleges that Defendant's misrepresentation deprived him of the very thing the Cookie Banner offered: the ability to make an informed choice about whether his browsing would be shared with third parties. *Id.* ¶¶ 4, 8, 52, 217-18. Each of these is a consequence of the deception, not the deception itself, and each is a cognizable injury. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (injury adequately alleged where consumer did not receive what defendant's representation led him to expect).

Defendant's cases do not hold otherwise. *Cohen*, *Mount*, and *Smith* concerned data collection or sale untethered to any promise about user choice or ability to opt in (or out), and *Manning* and *Greco* were data-breach cases in which the alleged injury was a speculative risk of future identity theft. *See* Mot. at 21-22 (citing *Cohen v. Casper Sleep Inc.*, Nos. 17cv9325; 17cv9389; 17cv9391, 2018 WL 3392877, at *8 (S.D.N.Y. July 12, 2018); *Mount v. PulsePoint,*

*Inc.*, No. 13 Civ. 6592 (NRB), 2016 WL 5080131, at *11-*13[3] (S.D.N.Y. Aug, 17, 2016); *Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (App. 2002); *Manning v. Pioneer Sav. Bank*, 55 N.Y.S.3d 587, 593 (2016); *Greco v. Syracuse ASC, LLC*, 193 N.Y.S.3d 511, 514 (4th Dept. 2023)). Where, as here, the defendant's deceptive statement concerns the consumer's control over a transaction and the consumer alleges he would have acted differently absent the deception, New York courts recognize the resulting loss of that control as actual injury. *See Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *17 (W.D.N.Y. Mar. 19, 2024) ("Plaintiff's allegations that they would not have provided their Private Information to Defendant had they known of Defendant's practices…sufficiently pleads that they were denied the benefit of the bargain."); *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *9 (D. Ariz. Jan. 28, 2025) (allegations that the plaintiff "expected her communications would remain confidential, she 'never consented to the disclosure,' of her information, and that disclosure breached her privacy" sufficient to state injury for GBL claim).[4] Accordingly, Plaintiff has adequately alleged injury for purposes of his GBL claims.

---

[3] In addition, the plaintiffs in *Mount* included "no allegations that [the defendant] was able to link [the acquired] information to specific persons." 2016 WL 5080131, at *11. Not so here, where Plaintiff alleges that the Tracking Tools transmitted user browsing activity together with persistent identifiers and identifying cookies (including the Meta c_user cookie, which contains the user's Facebook ID and "allow[s] Meta to link the data it receives through the Meta Pixel to individual Facebook account holders," and the TikTok _ttp cookie, which "is used to identify TikTok users"). *See* Compl. ¶¶ 6, 19, 64-65, 67, 104-06, 128-32, 155, 169, 233.

[4] Defendant's attempts to distinguish *Kane* and *Strong* (Mot. at 22 n.8) fail. Defendant contends that, unlike the defendant in *Kane*, "Grinnell never stated that it would not collect user data." *Id.* But that is precisely what Plaintiff alleges: the Cookie Banner told users that they could "accept the use of cookies" by clicking "I Agree," representing that cookies would not be used to track them unless and until they did so. Compl. ¶¶ 4, 8, 47, 52, 200-01. Defendant next argues that Plaintiff "does not allege that he made any monetary payment to Grinnell." Mot. at 22 n.8. But the GBL contains no purchase requirement, and Defendant itself concedes that injury need not be pecuniary. Mot. at 21. Finally, Defendant argues that this case does not involve "highly sensitive" medical information. Mot. at 22 n.8. The sensitivity of the data is not an element of a GBL claim, however. Instead, the question under §§ 349 and 350 is whether the consumer was deceived and injured.

### B. Plaintiff Has Sufficiently Alleged That the Cookie Banner Was Materially Misleading

Defendant's Cookie Banner is misleading. It stated: "We use cookies…. To accept the use of cookies and continue on to the site, click 'I Agree.' For more information about our use of cookies and how to opt out, please refer to our website privacy policy." Compl. ¶ 47. As explained *supra* at 14-16, a reasonable consumer reading that sentence would understand that not clicking means not accepting. Compl. ¶¶ 4, 8, 52. At best, Defendant's alternative reading raises an issue of fact inappropriate for determination on a motion to dismiss. *See Ward v. Pepperidge Farm, Inc.*, 773 F. Supp. 3d 10, 18 (S.D.N.Y. 2025) (whether a representation would mislead "a reasonable consumer acting reasonably under the circumstances" is ordinarily a question of fact) (quoting *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022)); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 295 (S.D.N.Y. 2022) ("[A] court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer, but it must proceed with care in doing so as the inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." (quotation marks omitted)).

Defendant's "full disclosure" argument (Mot. at 24–25) is unavailing because the practice Plaintiff challenges is not disclosed anywhere. Plaintiff alleges that the Tracking Tools began intercepting and transmitting his communications the moment he arrived on the Website—before the Cookie Banner was displayed and before he had any opportunity to accept or decline. Compl. ¶¶ 8, 12, 51, 53, 179-80. Neither the Cookie Banner nor the Privacy Policy discloses that tracking begins before the consent prompt appears, or that the "I Agree" button has no effect on whether it occurs. Nor does either disclose that Defendant embedded pixels from TikTok, Meta, Reddit, and Snap that transmit users' page-level browsing data and persistent identifiers to those companies for advertising and profile-building. *See* Compl. ¶¶ 5-7, 50, 180. Such an omission is fatal to

Defendant's argument here. *See* N.Y. Gen. Bus. Law § 350-a (advertising is misleading where it "fails to reveal facts material in the light of [its] representations"). In any event, New York law does not permit a defendant to make a misleading front-line representation and then rely on a less prominent, contradictory disclosure elsewhere to defeat it. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("Reasonable consumers should not be expected to look beyond misleading representations…to discover the truth…in small print." (alterations adopted and citation omitted)).

## IV. <u>Plaintiff Has Stated Common Law Claims</u>[5]

### A. Plaintiff Has Stated An Invasion Of Privacy Claim

For invasion of privacy claims, Iowa law requires an intentional intrusion upon the plaintiff's private affairs that would be highly offensive to a reasonable person. *Koeppel v. Speirs*, 808 N.W.2d 177, 181 (Iowa 2011). Defendant's argument that web browsing is categorically not a "private affair" (Mot. at 26–27) rests on standing decisions involving session-replay tools that recorded a user's movements on a single website. But "[t]he wrongfulness of the conduct springs not from the specific nature of the recorded activities, but instead from the fact that [plaintiff's] activities were recorded without [his] knowledge and consent at a time and place and under

[5] Iowa law applies to these claims. A federal court sitting in diversity must apply the substantive law of the forum state, including its choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In determining which law to apply, Iowa courts consider: the "place of injury, place of conduct leading to the injury, domicile of the parties, and the place where any relationship between the parties is centered." *Harlan Feeders, Inc. v. Grand Lab.,* 881 F. Supp. 1400, 1409 (N.D. Iowa 1995) (citation omitted). Iowa courts have applied this principle to conclude that Iowa's choice-of-law rules should apply in cases in which the alleged conduct was committed by an Iowa-based defendant. *See Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 958-60 (N.D. Iowa 2006) (finding that, in a misappropriation of trade secrets case between a Virginia-based plaintiff and an Iowa-based defendant, Iowa choice-of-law rules applied, as the majority of defendants' tortious conduct occurred in Iowa and the benefits of the defendants' conduct were enjoyed in Iowa). That principle dictates the application of Iowa law to Plaintiff's common law claims here.

circumstances in which [he] had a reasonable expectation of privacy." *In re Marriage of Tigges*, 758 N.W.2d 824, 830 (Iowa 2008).

That is precisely what is alleged here. Defendant told visitors their consent would govern tracking, then it enabled multiple advertising platforms to intercept their browsing before it received that consent and, regardless of whether it ever received the consent, allowed the data to be matched to their identities and combined with their activity across the internet. Compl. ¶¶ 4, 8, 12, 65, 104-06, 132, 180, 237, 249. Moreover, Defendant's own authority recognizes that tracking may constitute an intrusion where the information collected is "so broad…that it renders the tracking highly offensive." *Garcia v. Blackhawk Network*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) (Mot. at 28 n.11). Cross-site profiling by TikTok, Meta, Google, Reddit, and Snap, undertaken in the face of a consent prompt Defendant itself disregarded, plausibly meets that standard at the pleading stage. Compl. ¶¶ 45, 181, 237, 249, 253-56.

**B. Plaintiff Has Stated A Common Law Fraud Claim**

Plaintiff pleads fraud with the particularity Rule 9(b) requires: the who (Defendant), what (the Cookie Banner's statement that users "accept the use of cookies" by clicking "I Agree"), when (Plaintiff's 2024 visit), where (the Website), and how (Tracking Tools deployed before and regardless of consent). Compl. ¶¶ 12, 19, 47, 51, 53; *see United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (to satisfy Rule 9(b), "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud") (citation omitted). Defendant's element-by-element attack on this claim fails.

*Misrepresentation.* Defendant's contention that the Cookie Banner "contained no false statement" (Mot. at 29) depends on its own reading, which is at most a competing inference. *See supra* at 15, 20. Regardless, Iowa law also recognizes fraud by half-truth: a party that speaks must not create a false impression through partial disclosure. *See Wright v. Brooke Grp. Ltd.*, 652

N.W.2d 159, 174 (Iowa 2002). The Banner's invitation to "accept" cookies, unaccompanied by any disclosure that tracking was already underway and would continue absent affirmative action, is precisely such a half-truth. *See* Compl. ¶¶ 8, 201, 215.

*Materiality.* A misrepresentation is material if it is "likely to induce a reasonable person to act." *Dier v. Peters*, 815 N.W.2d 1, 8 (Iowa 2012). Whether one's browsing will be shared with third-party advertisers is exactly the kind of fact that induces a reasonable person to click, decline, or leave—which is why Defendant built a consent prompt around it. Compl. ¶¶ 4, 203, 216. The Third Circuit's observation in *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025), that internet activity is "not completely private" (Mot. at 29) does not bear on materiality. That statement addresses what internet users generally expect; materiality asks whether a particular representation would influence a reasonable person's decision. *Dier*, 815 N.W.2d at 8. The representation here was specific: Grinnell's Cookie Banner told visitors that they would accept cookies by clicking "I Agree." A reasonable visitor deciding whether to keep browsing would want to know that the choice the Banner offered was illusory, and that tracking had already begun and would continue regardless of whether he clicked "I Agree." *See* Compl. ¶¶ 4, 8, 12, 47, 203, 216, 257.

*Scienter.* Rule 9(b) permits knowledge and intent to be "alleged generally." Fed. R. Civ. P. 9(b). Plaintiff alleges Defendant designed the Banner, selected and configured the Tracking Tools, and knew they fired before any user could respond. Compl. ¶¶ 55, 175, 180, 214, 239, 259-60. Defendant's suggestion that it could not have anticipated Plaintiff's reading (Mot. at 30) is a factual dispute about what Defendant knew, not a pleading defect.

*Reliance.* Justifiable reliance requires only that the plaintiff not ignore "the obvious," and is "[n]ormally…[a question] for the fact finder to resolve." *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 737, 739 (Iowa 2009). Here, nothing in the hyperlinked Privacy Policy would have

disabused Plaintiff, because it nowhere discloses that tracking begins before the Banner appears or proceeds regardless of the user's choice. *See supra* at 15-16; Compl. ¶ 50. Regardless, a consumer is not required to investigate behind a facially clear disclosure and request for consent to discover that it is misleading.

*Causation and damages.* Defendant argues the Banner could not have caused injury because tracking began before it was displayed. Mot. at 30. But Plaintiff alleges the tracking *continued* throughout his visit and that, in reliance on the Banner, he kept browsing rather than leaving, limiting his activity, or blocking the Tracking Tools. Compl. ¶¶ 8, 12, 19, 51, 203. Accordingly, each interception after the Banner appeared was caused by and traceable to Defendant's misrepresentation.

**C. Plaintiff Has Stated An Unjust Enrichment Claim**

Defendant's argument that an "express contract controls" (Mot. at 31) cannot be reconciled with its position, several pages earlier, that it "made no promise" to users to refrain from collecting information (Mot. at 12). In any event, whether a browsewrap contract was formed is disputed, and Rule 8(d) permits Plaintiff to plead unjust enrichment in the alternative pending that determination. Fed. R. Civ. P. 8(d)(2)-(3). Nor does the Privacy Policy even address the conduct at issue, *see supra* at 15-16, so no contract "involving the same subject matter" displaces the claim even if such a contract was ever formed. *See* Mot. at 31.

In addition, Defendant's contention that it retained nothing "unjust" because Plaintiff "paid nothing" (Mot. at 32) misstates Iowa law. A benefit for unjust-enrichment purposes can be "any form of advantage." *Okoboji Camp Owners Co-op. v. Carlson*¸ 578 N.W.2d 652, 654 (Iowa 1998) (citation omitted). Plaintiff alleges his browsing data has independent market value, that Defendant obtained it in exchange for a representation it did not honor, and that Defendant monetized it

through more effective advertising and reduced marketing costs. Compl. ¶¶ 45-46, 65, 94, 267-68. Accordingly, Plaintiff's unjust enrichment claim should not be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. Should the Court grant Defendant's Motion, Plaintiff respectfully requests leave to amend to address any deficiencies the Court identifies in his Complaint.

Dated: September 8, 2026

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Mark S. Reich*
Mark S. Reich*
Eleanor Davis*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363.7500
Fax: (212) 363.7171
Email: mreich@zlk.com
Email: edavis@zlk.com

By: */s/ J. Barton Goplerud*
J. Barton Goplerud
Brian O. Marty
**SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.**
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
Email: goplerud@sagwlaw.com
Email: marty@sagwlaw.com

*admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 8, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will serve all counsel of record.

*/s/ Mark S. Reich*
Mark S. Reich
Attorney for Plaintiff