IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| EYAL HANFLING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GRINNELL COLLEGE,<br><br>Defendant. | Case No. 4:26-cv-213-RGE-HCA<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiff does not possess Article III standing. ..... 1

II. Plaintiff does not state for claim for violation of the federal Wiretap Act (Count III). ..... 5

A. Plaintiff did not allege that Grinnell intercepted contents of an electronic communication. ..... 5

B. Grinnell is protected by the Consent Exception and Party Exception to the Wiretap Act. ..... 6

III. Plaintiff does not state a claim for violation of New York's Deceptive Act and Practices Act or False Advertising Law (Counts I, II). ..... 8

A. Plaintiff's choice-of-law concession defeats his New York law claims. ..... 8

B. Plaintiff has not plausibly alleged that he suffered an actual injury. ..... 8

C. Plaintiff has not alleged that he was materially misled. ..... 9

IV. Plaintiff does not state a common law claim (Counts IV, V, VI). ..... 10

A. Plaintiff does not state an invasion of privacy claim. ..... 10

B. Plaintiff does not state a claim for fraud. ..... 11

C. Plaintiff does not state a claim for unjust enrichment. ..... 12

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Cases**

*Asbury Square, L.L.C. v. Amoco Oil Co.*, 218 F.R.D. 183 (S.D. Iowa 2003) .............................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 11

*Butler v. U.S. Bancorp*, No. 24-CV-03700 (JMB/SGE), 2026 WL 883904 (D. Minn. Mar. 31, 2026) ........................................................................................ 2

*Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978 (N.D. Cal. 2022) .................................................... 8

*Cobbs v. PetMed Express, Inc.*, No. 25-80458-CIV-CANNON/Reinhart, 2026 WL 2234135 (S.D. Fla. July 31, 2026) ........................................................................................ 3

*Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........................... 9

*Correia v. Lulu & Ga., Inc.*, No. 3:26-cv-01186-GPC-JLB, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) ........................................................................................ 2

*Croteau v. TN Mktg., LLC*, No. 25-CV-0940 (PJS/ECW), 2026 WL 810813 (D. Minn. Mar. 24, 2026) ........................................................................................ 2

*Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ........................................................................................ 2

*Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) ........................................................................................ 9

*Ellison-Robbins v. Bimbo Bakeries USA, Inc.*, 751 F. Supp. 3d 948 (E.D. Mo. 2024) .................. 4

*Foster v. Walmart, Inc.*, 15 F.4th 860 (8th Cir. 2021) .................................................................. 6

*Gauatri De v. Edmunds.com, Inc.*, No. 3:26-cv-08720-JSC, 2026 WL 2691356 (N.D. Cal. Sept. 14, 2026) ........................................................................................ 3

*Hanson v. Sanford Health Corp.*, No. 25-CV-3129 (PJS/LIB), 2026 WL 2620862 (D. Minn. Sept. 4, 2026) ........................................................................................ 2, 10

*Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 2478751 (N.D. Cal. Jan. 29, 2026) ........................................................................................ 2

*Holmseth v. City of E. Grand Forks*, No. CIV. 14-2970 DWF/LIB, 2015 WL 4488424 (D. Minn. July 23, 2015) .......... 4

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) .......... 5, 7

*In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) .......... 5

*In re Mercy Hosp.*, No. 23-00623 (TJC), 2026 WL 1180351 (N.D. Iowa Apr. 30, 2026) .......... 12

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 5

*Italian Tile Marble & Granite, Inc. v. Floor & Decor*, No. 25-CV-3533 (DLI) (LKE), 2026 WL 1224045 (E.D.N.Y. May 5, 2026) .......... 10

*Jones v. Bloomingdales.com, LLC*, 124 F.4th 535 (8th Cir. 2024) .......... 1, 2, 3, 10, 11

*Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916 (D. Minn. 2024) .......... 7

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) .......... 9

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) .......... 2

*Q.J. v. Powerschool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) .......... 7

*Sentelik v. Nash Finch Co.*, No. 3:09-CV-00118-JEG, 2010 WL 11614250 (S.D. Iowa Mar. 29, 2010) .......... 4

*Silver v. H&R Block*, Inc., 105 F.3d 394 (8th Cir. 1997) .......... 4, 10

*Smith v. Maryland*, 442 U.S. 735 (1979) .......... 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 9

*Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, No. 3:20-CV-00599, 2023 WL 5057242 (M.D. Tenn. Aug. 8, 2023) .......... 8

*Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868 (8th Cir. 2002) .......... 4

*Williams v. Dukehealth*, No. 1:22-cv-727, 2024 WL 898051 (M.D.N.C. Marc. 1, 2024) .......... 2

*Williams v. Sec. Nat'l Bank of Sioux City, IA.*, 293 F. Supp. 2d 958 (N.D. Iowa 2003) ................. 5

*Young by & through Young v. Rally Appraisal, L.L.C.*, No. 18-0942, 2019 WL 1486608 (Iowa Ct. App. Apr. 3, 2019)........................................................................................ 11

*Zean v. Fairview Health Servs.*, 858 F.3d 520 (8th Cir. 2017) ....................................................... 4

**Statutes**

18 U.S.C. § 2510.......................................................................................................................... 6

18 U.S.C. § 2511 .......................................................................................................................... 6

## INTRODUCTION

"[P]laintiffs lack standing in cases like these where they don't allege the interception of private information." *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 539 (8th Cir. 2024). Plaintiff's resistance to Grinnell's motion to dismiss, ECF No. 23 ("Res. Br."), makes a half-hearted attempt to distinguish *Jones* on the facts and does not engage with the Eighth Circuit's reasoning. Plaintiff lacks standing as matter of law, and his claims must be dismissed.

## ARGUMENT

### I. Plaintiff does not possess Article III standing.

Plaintiff's resistance confirms that the Complaint alleges no more than an "abstract" injury that is insufficient to confer standing. *See, e.g.*, *Jones*, 124 F.4th at 538. Because Plaintiff cannot allege that Grinnell collected Plaintiff's private information—after all, Plaintiff's only interaction with Grinnell was to *read a few pages on Grinnell's website on one occasion*, *see* Compl. ¶ 11—the reasoning of *Jones* applies with equal force in this case. *See id.* at 539. Information about "a person's general navigation across a website" does not implicate a privacy interest. *Id.*

Plaintiff's only discussion of *Jones* is to point out that *Jones* involved slightly different allegations about the tracking technology used by the website provider. (Res. Br. 8.) That distinction is immaterial. The *Jones* plaintiff alleged that the tracking technology was capable of identifying specific users if a user, for example, input her name in a text box, and of "connect[ing] the user's identify to a digital fingerprint." *Id.* at 538. This was irrelevant where the Plaintiff did not actually allege the capture of "personal information like her social security number, medical history, bank account figures, or credit card information . . . or even her name." *Id.* It's the same here. Plaintiff apparently input no information on Grinnell's website other than his selection of webpages to browse. Any information provided by Plaintiff to Grinnell, such as his IP address,

was, per the Complaint, an inherent aspect of the display of *any* website. *See* Compl. ¶ 25.[1]

Plaintiff then pivots to trying to hold Grinnell responsible for hypothetical conduct on the part of social-media companies, such as TikTok or Meta. (Res. Br. 7–9.) The Complaint contains a litany of facts regarding what these third parties might be able to do with data that they might obtain from website proprietors, in general. (Compl. ¶¶ 57–165.) But Grinnell is not a social media company, and the Complaint contains no plausible allegations that *Grinnell* has combined any of Plaintiff's browsing data provided to Grinnell with any other data concerning Plaintiff.[2]

Allegations about "what [a] technology is able to capture generally" do not confer standing. *Jones*, 124 F.4th at 539. Where, as here, a plaintiff voluntarily conveys information to the defendant, and where, as here, the allegations do not meet the threshold identified in Jones, there is no invasion of privacy sufficient to confer standing. *Id.* at 540; *Hanson v. Sanford Health Corp.*, No. 25-CV-3129 (PJS/LIB), 2026 WL 2620862, at *2 (D. Minn. Sept. 4, 2026) ("A plaintiff cannot maintain an intrusion-upon-seclusion claim when he voluntarily disclosed the relevant information

---

[1] Plaintiff cites to easily distinguishable cases in which plaintiffs alleged capture of sensitive information such as online video viewing data. *See Croteau v. TN Mktg., LLC*, No. 25-CV-0940 (PJS/ECW), 2026 WL 810813 (D. Minn. Mar. 24, 2026), involved disclosure of online video viewing information. *Compare id.* at *4; *Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 WL 1138358, at *3 (N.D. Cal. Apr. 21, 2026) (similar), *with Butler v. U.S. Bancorp*, No. 24-CV-03700 (JMB/SGE), 2026 WL 883904, at *4 (D. Minn. Mar. 31, 2026) (finding case law involving disclosure of video viewing histories to be "readily distinguishable"). *Williams v. Dukehealth*, No. 1:22-cv-727, 2024 WL 898051 (M.D.N.C. Marc. 1, 2024), involved "protected health information." *Id.* at *5. Other cases are similarly distinguishable. *E.g.*, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1268–69 (9th Cir. 2019) (addressing Facebook's use of facial-recognition technology); *Correia v. Lulu & Ga., Inc.*, No. 3:26-cv-01186-GPC-JLB, 2026 WL 2343093, at *4 (S.D. Cal. Aug. 12, 2026) (finding plaintiff had standing when they affirmatively attempted to opt out and their information was collected anyway); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 247875, at *1 (N.D. Cal. Jan. 29, 2026) (addressing allegations that the defendant installed software onto users' browsers). The California district court's conclusion in *Garcia v. Anschutz Enter. Grp., Inc.*, 832 F. Supp. 3d 993 (C.D. Cal. 2026) that collection of data such as "shopping behaviors" confers standing is facially inconsistent with *Jones*. *See* 124 F.4th at 540.

[2] Grinnell assumes Plaintiff's allegations, including those regarding the alleged use of "pixel" technology, to be true for the purposes of this motion only.

to the defendant."). Under *Jones*, allegations about what data Grinnell *may* have collected and how this data *may* have been used do not confer standing. *See* 124 F.4th at 539.

Further, Plaintiff argues that third parties *might* be capable of connecting Plaintiff's Grinnell.edu browsing data to other data already possessed by those third parties to supplement a "profile" of him, but the Complaint contains no facts that would suggest this actually happened to Plaintiff as a result of one 2024 website visit.[3] *See Gauatri De v. Edmunds.com, Inc.*, No. 3:26-cv-08720-JSC, 2026 WL 2691356, at * 2 (N.D. Cal. Sept. 14, 2026) (finding no standing when the complaint did not allege "what targeted advertising, if any, Plaintiff received as a result, or how any such collection or use was highly offensive"); *Cobbs v. PetMed Express, Inc.*, No. 25-80458-CIV-CANNON/Reinhart, 2026 WL 2234135 (S.D. Fla. July 31, 2026) (noting "generalized statements . . . cannot supplant the individualized analysis necessary to determine whether *these named Plaintiffs*—not just any plaintiff—have article III standing"). Plaintiff does not allege that he is a TikTok user, has a Facebook profile, or has a Reddit account, for example. *Cf.* Compl. ¶¶ 67, 104–09, 131–32. If Plaintiff has previously shared his data with these third-parties, then the nature of their data concerning Plaintiff *would have nothing to do with Grinnell*.

Plaintiff also argues that he possesses standing because he was allegedly deceived by the text of the "Cookie Banner." This argument has a number of significant flaws. (*See* ECF No. 16 at 11–12 ("MTD Br.").) Crucially, Plaintiff's failure to engage with *Jones* is fatal. The Eighth Circuit has held that plaintiffs do not possess a privacy interest in information that the plaintiff cannot "reasonably expect to keep private" from the counterparty to the interaction. *Jones*, 124 F.4th at 535. All that Plaintiff has alleged here is that he provided data to Grinnell that *had* to be provided,

---

[3] For example, Plaintiff alleges that the TikTok Pixel is capable of collecting "names, passwords, and authentication codes." (Res. Br. 8–9 (citing Compl. ¶ 72).) Plaintiff does not allege that he provided Grinnell his name, any passwords, or any "authentication codes."

as a technical matter, in order for Plaintiff to view the web pages he wished to read. Without a cognizable privacy interest, any alleged intangible harm from *any* alleged misrepresentation does not meet the constitutional minimum to establish standing. *Id.* at 538–39.

Further, Plaintiff's contention that the Cookie Banner "represented to him that he would be tracked only if he selected 'I Agree'" is not a well pleaded factual allegation. *See Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (holding that courts may ignore "unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). What the Cookie Banner says is not in dispute. What the Cookie Banner *does* is not in dispute. The "I Agree" button dismisses the banner, and the "Privacy Policy" button takes the user to the Privacy Policy. The text of the Cookie Banner discloses the use of cookies, and it is consistent with the Privacy Policy. (*See* MTD Br. 2 (quoting Privacy Policy statement that upon visiting the website, Grinnell may collect data and use cookies, including third-party cookies).)

Only Plaintiff's attorney argument is inconsistent with the text of the Cookie Banner. The Court may—and should—recognize on this motion what the Cookie Banner says and what it does not say. *See, e.g.*, *Zean v. Fairview Health Servs.*, 858 F.3d 520, 528 (8th Cir. 2017) (dismissing claims based on the plain language of the parties' agreement); *Silver v. H&R Block*, Inc., 105 F.3d 394, 397 (8th Cir. 1997) (granting pre-*Twombly* motion to dismiss securities fraud claim where "the challenged statements were not misleading"); *Ellison-Robbins v. Bimbo Bakeries USA, Inc.*, 751 F. Supp. 3d 948, 955 (E.D. Mo. 2024) (dismissing claim based on "unreasonable or fanciful interpretations of labels or other advertising"); *Holmseth v. City of E. Grand Forks*, No. CIV. 14-2970 DWF/LIB, 2015 WL 4488424, at *15 (D. Minn. July 23, 2015) (rejecting plaintiff's interpretation of the text of a search warrant on motion to dismiss); *Sentelik v. Nash Finch Co.*, No. 3:09-CV-00118-JEG, 2010 WL 11614250, at *2 (S.D. Iowa Mar. 29, 2010) (dismissing ERISA

claims by applying the undisputed language of a plan document); *Williams v. Sec. Nat'l Bank of Sioux City, IA.*, 293 F. Supp. 2d 958, 970, 972 (N.D. Iowa 2003) (dismissing fraud claims where the statements did not contain the proposition that the plaintiff alleged the defendant made).

**II. Plaintiff does not state for claim for violation of the federal Wiretap Act (Count III).**

**A. Plaintiff did not allege that Grinnell intercepted contents of an electronic communication.**

Each of Plaintiff's tort claims fail to state a claim on the merits as well. Plaintiff's Wiretap Act claim fails as a matter of law for at least three distinct reasons. First, Plaintiff has not actually alleged that the contents of any electronic communications were intercepted. (*See* MTD Br. 14–15.) Plaintiff argues that URLs may contain content. He also argues that the Complaint's references to "identifiers and related metadata" or what sorts of information so-called "Tracking Tools" "may" capture meets the pleading standard. Neither argument saves Plaintiff's claims.

Plaintiff's own authority recognizes that ordinarily, a URL "with only basic identification and address information is not content." *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023). The URL may contain content where the it displays information input by the user, such as a typed search term. *Id.*; *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (distinguishing a URL that only displays the "webpage the user was viewing" from a URL that displays "specific search terms the user had communicated").[4] Plaintiff does not allege that Grinnell captured any particular URL containing any search terms provided by Plaintiff or similar

[4] The Third Circuit case cited by Plaintiff, like Grinnell's opening brief, recognized the distinction between data inherently exchanged in the process of making a communication and the substance of that communication. *Compare In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135, 138 (3d Cir. 2015) (noting the "important difference between extrinsic information used to route a communication and the communicated content itself" and concluding that "highly detailed URLs" may constitute content (citing *Smith v. Maryland*, 442 U.S. 735 (1979))), *with* MTD Br. 14 ("[I]nformation or data inherently exchanged in the process of connecting phone calls are not the substance of a communication.").

data. The Complaint is silent as to how Plaintiff accessed the pages he browsed. There is no basis to infer that any URLs allegedly captured by Grinnell constitute "content."

Similarly, the "metadata" referred to by Plaintiff does not, in Plaintiff's terms, "reveal[] . . . what was said." (Res. Br. 12.) Indeed, the Complaint does not allege that Plaintiff ever made a communication to Grinnell containing "substance, purport, or meaning." *See* 18 U.S.C. § 2510(8).

### B. Grinnell is protected by the Consent Exception and Party Exception to the Wiretap Act.

Plaintiff attempts to argue that Grinnell is not a party to the communication under the Consent Exception by conflating the language of this exception with the Party Exception. *See* 18 U.S.C. § 2511(2)(d). These are separate exceptions that each independently defeat the claims.

*Consent Exception – Grinnell's Consent.* Plaintiff does not appear to contest whether Grinnell consented to all of the conduct that Plaintiff alleges constitutes a Wiretap Act violation. (*See* MTD Br. 17.) The Wiretap Act is a one-party consent statute. This defeats Plaintiff's claim.

*Consent Exception – Plaintiff's Consent*. Plaintiff similarly does not appear to meaningfully contest whether he entered into a browsewrap agreement with Grinnell by accessing and using Grinnell's website. Instead, Plaintiff argues that this browsewrap agreement is irrelevant because it cannot provide "prior consent" under the Wiretap Act. (Res. Br. 14.) But Plaintiff misunderstands the nature of his own agreement with Grinnell. It is a valid and enforceable contract and, like any contract, is the product of mutual assent or a "meeting of the minds." *Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021). The agreement is formed through the user's performance of a specific act *as defined in the agreement*. *Id.*

Here, the agreement at issue is formed at the moment the user "visit[s] [Grinnell's] website." (MTD Br. 3 (quoting language from the Privacy Policy stating that it applies "[w]hen you use our website," "[w]hen you view our website," "[b]y using this website," and so forth).)

The act of visiting Grinnell's website is necessarily antecedent to the act of triggering any alleged "Tracking Tools." Plaintiff, in other words, entered into a valid, enforceable agreement consenting to the complained-of conduct prior to the conduct occurring. This consent defeats his claim.

Plaintiff also argues that the Privacy Policy does not specifically mention "pixels from TikTok, Meta, Reddit, Google, and Snap." (Res. Br. 14.) The Privacy Policy discloses the use of "third-party cookies" on Grinnell.edu as well as third-party "plug-ins." (MTD Br. 4.) It identifies Facebook (Meta) and Google as part of a non-exclusive list of "other social media services." (*Id.*)

*Party Exception*. Plaintiff argues Grinnell is not a party to certain communications because it was a "procurer." (Res. Br. 23.) His resistance brief appears to assume Grinnell was a "procurer" and not an "interceptor" without actually analyzing the question. This assumption is unfounded. "[A] party to the conversation is one who takes part in the conversation." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015). The very premise of Plaintiff's lawsuit is that the information he tendered to Grinnell in the course of browsing Grinnell's website was allegedly used or disclosed in ways Plaintiff did not want. (*See, e.g.*, Compl. ¶ 19.) The only data the so-called "Tracking Entities" could have obtained with any nexus to Grinnell is the "back-and-forth stream of requests and responses between a user's browser and a website's store code and data . . . that make[s] up their entire experience on the Website." (Compl. ¶¶ 37–38.)

The case law cited by Plaintiff does not establish that the Party Exception would not apply to a so-called "procurer." *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927 (D. Minn. 2024) (assuming that the Party Exception *does* apply to "procurers"); *Q.J. v. Powerschool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *6 n.3 (N.D. Ill. Aug. 20, 2025) (declining to analyze or reach the issue at all). Such a conclusion would be inconsistent with the "presumptive non-liability of parties" under the Act. *Mekhail*, 726 F. Supp. 3d at 927.

*Crime-Tort Exception to the Consent Exception or Party Exception*. Plaintiff's argument regarding the Crime-Tort Exception was addressed by Grinnell's opening brief. Plaintiff has not and cannot allege an intentional criminal or tortious act independent of the act of recording. (*See* MTD Br. 15–16.) Plaintiff's allegations about third-party "pixels" are still allegations about the act of recording. (*See* Res. Br. 15–16.) Plaintiff has not alleged that Grinnell or any third-party used the data that Plaintiff alleges he provided to Grinnell (*i.e.*, his IP address and pages visited) for an independent unlawful or tortious purpose.[5]

## III. Plaintiff does not state a claim for violation of New York's Deceptive Act and Practices Act or False Advertising Law (Counts I, II).

### A. Plaintiff's choice-of-law concession defeats his New York law claims.

Plaintiff's resistance states that Iowa common law applies to his claims in this case. (Res. Br. 21 n.5.) Plaintiff's position, therefore, is that Iowa has the most significant relationship to his claims against Grinnell. "Choice of law requires determining the *single* state's substantive law that applies to a particular plaintiff's claims." *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978, 988 (N.D. Cal. 2022). A plaintiff cannot bring claims under separate states' laws against the same party for the same conduct. Plaintiff has apparently made his choice of law, and the New York claims must be dismissed. *See, e.g.*, *Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, No. 3:20-CV-00599, 2023 WL 5057242, at *6 (M.D. Tenn. Aug. 8, 2023) (collecting similar cases).

### B. Plaintiff has not plausibly alleged that he suffered an actual injury.

New York courts have held that a privacy injury can support a claim under New York

[5] Plaintiff's allegations about Grinnell's supposed motivation in allegedly allowing pixels to be placed on its website—assuming the allegations to be true—do not reach as far as Plaintiff's brief would suggest. Paragraphs 67 and 94 simply state that website operators *could* use data provided by TikTok or Google in their own marketing efforts, but the Complaint contains no facts that would suggest that Grinnell actually did this with respect to Plaintiff's data. (*See* Compl. ¶¶ 67, 94.) The Complaint contains no allegations that would plausibly suggest Grinnell used the minimal data Plaintiff provided in the course of browsing the website once for anything.

General Business Law sections 349 and 350 "where confidential, individually identifiable information—***such as medical records or a social security number***—is collected without the individual's knowledge or consent." *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 384 (S.D.N.Y. 2024) (emphasis added) (collecting cases); *see also, e.g.*, *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 WL 2052302, at *3–4 (N.D. Cal. July 22, 2025) (analyzing allegations relating to private medical and prescription information input by users).[6] For the reasons stated above and in Grinnell's opening brief, Plaintiff cannot meet this standard.

**C. Plaintiff has not alleged that he was materially misled.**

Plaintiff appears to concede in his brief that the Cookie Banner contained no false statements. *Compare*, *e.g.*, Compl. ¶ 5 ("Defendant's assurances are false."), *with* Res. Br. 20 ("Defendant's Cookie Banner is misleading."). The Cookie Banner did not mislead Plaintiff by not explicitly stating that "not clicking means not accepting" when it states that Grinnell's website uses cookies *and* that the user must take further action to identify "how to opt out." (*Compare* Res. Br. 20., *with* Compl. ¶ 4 (excerpting the Cookie Banner).) If the Cookie Banner possessed any ambiguity, the Privacy Policy *explicitly incorporated by reference* within the Cookie Banner would clear that up.[7] The Privacy Policy states clearly, repeatedly, and in detail that use of Grinnell's website constitutes consent to, *inter alia*, use of cookies, provides information regarding how to opt-out where possible, and, critically, ***never*** states or suggests that Grinnell's website will not use cookies unless the user clicks the "I Agree" button on the Cookie Banner. (*See* MTD Br. 2–4.)

---

[6] *Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015), concerned a plaintiff who actually paid money to buy a service. *Id.* at 301–02. The plaintiff's injuries were traditional, "tangible" monetary harms. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). To the extent Plaintiff contends he was injured here, his injury was an intangible privacy injury.

[7] If how Grinnell uses Plaintiff's data was material to Plaintiff, as he asserts, one would expect Plaintiff to read the Privacy Policy.

Plaintiff cannot get around these facts that are fatal to his claim. Nor may Plaintiff claim that his misinterpretation—or his attorneys' misinterpretation—of the Cookie Banner somehow creates an "issue of fact." As explained above, courts are under no obligation to credit a party's misinterpretation of undisputed language in a public statement. *E.g.*, *Silver v. H&R Block*, Inc., 105 F.3d at 397; *Italian Tile Marble & Granite, Inc. v. Floor & Decor*, No. 25-CV-3533 (DLI) (LKE), 2026 WL 1224045, at *4 (E.D.N.Y. May 5, 2026) (similar).

**IV. Plaintiff does not state a common law claim (Counts IV, V, VI).**

**A. Plaintiff does not state an invasion of privacy claim.**

Grinnell's opening brief cited a litany of cases, including cases within this Circuit, holding that individuals browsing the internet cannot presume they are doing so in private seclusion. (MTD Br. 26–27.) Plaintiff's resistance, rather than engage with the black letter law and its rationale, simply assumes that Plaintiff had a reasonable expectation of policy and argues from that premise. (Res. Br. 22.) But the entire reason Plaintiff fails to state a claim is because it is well established that an individual does *not* have an expectation of privacy with respect to basic non-web-browsing information such as his IP address or the web pages he views—particularly when he provides it voluntarily to *the counterparty to the communication* who is serving the individual with the very webpages he is viewing. *See, e.g.*, *Jones*, 124 F.4th at 539; *Hanson*, 2026 WL 2620862, at *2. Nothing about Iowa's invasion of privacy law would suggest any other conclusion.

Plaintiff also argues that he separately states a claim based on allegations of "[c]ross-site profiling ***by TikTok, Meta, Google, Reddit, and Snap***." (Res. Br. 22 (emphasis added).) Note what this allegation lacks: any allegation of "cross-site profiling" by Grinnell, the defendant in this action. In addition, the Complaint does not contain facts plausibly suggesting that *any* party engaged in "cross-site profiling" of Plaintiff specifically.

**B. Plaintiff does not state a claim for fraud.**

The Complaint comes nowhere close to alleging fraud with particularity:

*Misrepresentation.* Plaintiff's focus on the word "accept" ignores both the complete text of the Cookie Banner as well as the Privacy Policy incorporated and linked to therein. (Res. Br. 23.) As stated above, the Cookie Banner states that Grinnell's website uses cookies. The Privacy Policy confirms this unambiguously. (MTD Br. 2–4.) The complete terms of Plaintiff's agreement with Grinnell governs and defeats Plaintiff's fraud claim. *E.g.*, *Asbury Square, L.L.C. v. Amoco Oil Co.*, 218 F.R.D. 183, 189 (S.D. Iowa 2003).

*Materiality.* Plaintiff alleges he visited Grinnell's website to read information about academic programs. (Compl. ¶ 11.) He did not manually input any information. He did not create an account, log-in via any other online accounts he may possess, provide or even access any sensitive medical, financial, or other personal information. The information that Plaintiff *did* provide to Grinnell, such as IP address or pages viewed, is "is akin to the commonplace use of a security camera at a brick-and-mortar store to record customers as they shop . . . [b]ut no reasonable customer at a brick-and-mortar store could claim a privacy interest in her general movements and activities in the public parts of that store." *Jones*, 124 F.4th at 539.

*Justifiable reliance.* Plaintiff's conclusory allegation that he relied on the Cookie Banner is insufficient where the Cookie Banner itself directed Plaintiff to the Privacy Policy. Plaintiff "ignored the red flags at [his] own peril." *See Young by & through Young v. Rally Appraisal, L.L.C.*, No. 18-0942, 2019 WL 1486608, at *4 (Iowa Ct. App. Apr. 3, 2019).

*Intent.* Plaintiff pleads no specific facts that would support an inference that Grinnell knew or intended for its statements concerning cookies to be false or misleading. With respect to intent, Plaintiff must still satisfy Rule 8's "plausibility" requirement. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009). Allegations that Grinnell designed the Cookie Banner do not support an

interference that website visitors would misinterpret the Cookie Banner. The Cookie Banner discloses that Grinnell's website uses cookies and that reading the Privacy Policy is necessary in order to opt-out. The Privacy Policy then discloses Grinnell's practices in significantly more detail.

### C. Plaintiff does not state a claim for unjust enrichment.

An unjust enrichment claim cannot lie where the parties have an express contract that controls. Plaintiff's resistance asserts, without more, that "whether a browsewrap contract was formed is disputed." (Res. Br. 24.) But any such analysis is absent from Plaintiff's brief. And the subject of the unjust enrichment claim is the same as the subject matter of the parties' contract. *See, e.g.*, *In re Mercy Hosp.*, No. 23-00623 (TJC), 2026 WL 1180351, at *6 (N.D. Iowa Apr. 30, 2026) (dismissing unjust enrichment claim expressly pled in the alternative where the allegations were "plainly based on" the subject matter of a contract between the parties).

The Complaint also does not allege any facts that would plausibly suggest that Grinnell actually derived any benefit or advantage from the data that the Complaint identifies as having been exchanged between Plaintiff and Grinnell. The Complaint alleges that internet user data generally can have market value and that website operators who partner with social media companies generally may leverage customer data in marketing efforts. (Compl. ¶¶ 45–46, 65, 94.) But there is no connection between these vague and generalized allegations and Plaintiff's single specific interaction with Grinnell. The Complaint does not allege that Grinnell ever used Plaintiff's IP address or that a datum regarding Plaintiff's visit to any Grinnell web page has any value.

## CONCLUSION

Grinnell's motion raises the question of whether an individual who visited a small private college's website once and viewed some webpages may subject that college to burdensome, expensive, and disruptive class action litigation in federal court. Thankfully, the law makes clear that the answer to that question is **no**. The Complaint must be dismissed.

Dated: September 22, 2026


*/s/ Matthew A. McGuire*
Frank B. Harty, AT0003356
Matthew A. McGuire, AT0011932
Ami L. Penquite, AT0016149
NYEMASTER GOODE, P.C.
700 Walnut, Suite 1300
Des Moines, IA 50309
Telephone: (515) 283-3100
Fax: (515) 283-8045
Email: fharty@nyemaster.com
mmcguire@nyemaster.com
apenquite@nyemaster.com

Frances M. Haas, AT0009838
NYEMASTER GOODE, P.C.
275 1st Avenue SW, Suite 204
Cedar Rapids, Iowa 52405-3965
Telephone: (319) 286-7022
Facsimile: (319) 286-7050
Email: fmhaas@nyemaster.com

**ATTORNEYS FOR DEFENDANT GRINNELL COLLEGE**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties or attorneys of record:

J. Barton Goplerud
Brian O. Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com
marty@sagwlaw.com

Mark S. Reich
LEVI & KORSINSKY, LLP
33 Whitehall Street, 27th Floor
New York, NY 10004
mreich@zlk.com

/s/ *Matthew A. McGuire*